STATE of Missouri, Respondent,

v.

Ricardo ANTONE, Appellant.

No. WD 37927.

Missouri Court of Appeals,
Western District.

Dec. 30, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Denied
Feb. 3, 1987.

Application to Transfer Denied
March 17, 1987.

Peter M. Schloss, Kansas City, for appellant.

William L. Webster, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and MANFORD, JJ.

GAITAN, Presiding Judge.

Defendant-appellant, Ricardo Antone, was tried and convicted by a jury of stealing of a motor vehicle in violation of § 570.030 RSMo (1981). The defendant was found to be a persistent offender and was sentenced to ten years. Antone appeals alleging trial court error (1) in that there was insufficient evidence to support his conviction and (2) in failing to appoint substitute counsel. The judgment of the trial court is affirmed.

On March 2, 1985, at approximately 12:30 p.m., Glen Stapleton parked his blue 1980 Ford in the parking lot of a K Mart store located at 2821 N.E. Vivion Road, Kansas City, Clay County, Missouri. He returned to his car approximately 25 to 30 minutes later whereupon he discovered that his car was missing, and promptly notified the police.

Later that day, Kansas City Missouri Police officer Anthony B. Hogan received a call to go to the area of 25th and Campbell on report of suspicious parties. Officer Hogan responded to 2548 Campbell and observed a blue vehicle parked on a lot at that location. The vehicle was backed up to a building. Officer Hogan observed two individuals kneeling near the rear of it. One, a man, had a pipe and white cloth and was prying on the trunk with the pipe. The second appeared to be a woman. She approached the officer and informed him that the gentleman was assisting her in opening the trunk because she had lost her key. She indicated that the car belonged to a friend of hers in Independence, Missouri. It is unclear from the record whether the female gave her name as Paula Davis or stated that was her friend's name. The officer testified that a check of the license registration showed Glen Stapleton of 51st and Chouteau to be the owner. Mr. Stapleton was notified and came to the Campbell location and identified his car.

Officer Hogan determined that the apparent female who was arrested at the scene of 25th and Campbell actually was defendant, Ricardo Antone. Defendant was read his Miranda rights and transported to the police station.

At the police station, detective Lawrence Sherrard read defendant his Miranda rights and questioned him. Detective Sherrard testified that defendant gave three different stories about his involvement with the stolen vehicle. A brief excerpt of that testimony is as follows:

A. I asked Mr. Antone how he came to be in possession of the car, if he could tell me what happened in regards to the stolen auto.

And he first stated that he had been in the vicinity of Independence Avenue and Paseo. He flagged down three men who were driving a blue Ford. And he said they picked him up. And when he got in the car he noticed that one of the men had a gun. He was not sure which one of the persons had a gun.

However, he said the men began to drive south. And he overheard one of them say that the old peckerwood's briefcase is in the trunk.

He said that they drove to a lot, stopped the car, and then all three of them ran away ...

I told Mr. Antone that I did not believe his story. And he stated then that he did not steal the car, but, in fact, that the three men with the gun had stolen it when the owner tried to pick up a girl in the vicinity of Independence and Paseo.

He said that as they drove away he flagged them down and he got in the car with them.

Okay, I told Mr. Antone that the victim had not reported that the car had been stolen at gunpoint. And at this time he said that he fabricated the story about the three men with the gun because he had heard some police officers talking on the police radio about a stolen car and about three men

armed with a gun. He said that he thought all of the information had been connected.

When I asked if he would tell the truth about what had happened he said that he had told the truth about not knowing the man who was with him. He insisted that he flagged this person down.

I again asked him how he came to be in possession of the blue Ford. And at that time he said that he'd seen a black man who he did not know running down Forrest.

And he said that the black man told him that the car had been stolen from a peckerwood and that he'd tried to get the peckerwood's money.

He went on to state that the black man told him the money or a briefcase was in the trunk. He said that when he went to the car he noticed that the key that was in the ignition was not a trunk key.

And then he flagged down the man again in the brown Cadillac and asked him to, told him he'd locked his key in the trunk and he needed some help getting into the trunk.

I again pointed out to Mr. Antone that his story was not believable simply because of the constant change and he said at this time that he was too nervous to make a statement and that he wanted an attorney.

Defendant was arraigned on June 28, 1985. The indictment was read to defendant and the court entered a plea of not guilty since defendant did not have a lawyer. Defendant retained counsel and on July 12, 1985, attorney J. Michael Lacy appeared with defendant at a bond hearing.

On October 9, 1985, defendant appeared with Mr. Lacy for a docket call. Whereupon Lacy requested a continuance. The reasons given were (1) he had other business in the State of Oklahoma, (2) that he had not had ample time to prepare defendant's case because he was having difficulty communicating with the defendant. The court continued the cause with a new trial date of November 12, 1985. However, the par-

ties were to appear for a docket call on November 6, 1985.

On Wednesday, November 6, 1985, defendant again appeared with Mr. Lacy. Both Mr. Lacy and the prosecuting attorney announced ready for trial.

On the morning of trial, Tuesday, November 12, 1985, Lacy appeared at the calling of the case. Defendant arrived a few minutes late. Mr. Lacy informed the court that defendant had just given him a checkout card for the Four Acre Motel dated March 2, 1985, 12:49 p.m., the date and approximate time that Mr. Stapleton's car was stolen. In view of that revelation, Lacy requested a recess in order to subpoena an alibi witness, Mrs. Dee Cornelius. The trial court refused the request indicating that there had been ample time for discovery and that both parties had already announced ready for trial on November 6. At this point, Lacy indicated that he had filed several motions which he wished to make a record upon. These motions included a Motion to Withdraw, or in the Alternative, to Permit Defendant to Proceed Pro Se; a Motion to Suppress Statements Made by Defendant; Defendant's Motion in Limine; Motion for Mental Evaluation of Defendant; and Motion for Continuance with Suggestions.

The first matter taken up by the court was the motion to withdraw. Lacy, thereafter, recited for the court his attempts to seek defendant's cooperation in preparing his defense. They may be summarized as follows. Lacy stated that he directed correspondence to defendant on July 18 requesting defendant to come to the attorney's office. Lacy stated that he received no response. However, it appears that defendant did not arrange for bond until some time in August and therefore was still in jail at this time. In August, Lacy received phone calls from defendant and told defendant to come to his office to assist in the preparation of his case. The defendant failed to show. Lacy directed similar correspondence to defendant on September 6, 17, and October 1. After the docket call on October 9, defendant was told to meet with counsel to discuss his

defense. This meeting did not take place. Lacy recounted that he again met defendant at court on November 6 for the docket call. There appears to have been no discussion of trial preparation or strategy on this date. Thereafter on November 8, Lacy sent a letter to defendant indicating that he would withdraw or attempt to withdraw as counsel.

Lacy stated to the court that on Sunday evening, November 9, he contacted defendant and requested that defendant come to his office the following Monday morning. Apparently, defendant appeared at defense counsel's office at 9:30 a.m. the following morning and was asked by defense counsel to return again at 3:00 p.m. to "discuss other possibilities with reference to his representation." Defendant did not return. Upon this recitation of fact, defense counsel requested leave of the court to withdraw.

The trial court asked defendant if he had any response to Lacy's recitation. Defendant responded with statements indicating his dissatisfaction with Lacy's representation. Defendant indicated that although he was in jail for approximately four weeks following his bond reduction, he was never visited by his attorney. Lacy responded that he told the defendant to see him when he was released. Defendant testified that Lacy failed to file any Motion for discovery in order to prepare the case. However, Lacy responded that he told the defendant that he would get the discovery from the prosecutor without filing a formal request. For these reasons, Antone advised the court that he did not feel that Mr. Lacy had his best interests in mind.

The court advised defendant that Lacy would remain his counsel unless defendant wanted him out. Defendant was asked again if he was certain that he wished to allow his attorney to withdraw and defendant responded "May I have a moment to discuss this with my counsel?" Defendant then conferred with Lacy and informed the court "I've conferred with Mr. Lacy and I think that I should go ahead and proceed to represent myself." The State was granted leave to file a First Substitute Information

for Indictment citing defendant as a persistent offender and the court granted attorney J. Michael Lacy leave to withdraw.

The defendant was arraigned on the First Substitute Information for Indictment and plead not guilty. The court advised the defendant that Lacy had filed a motion for Mental Evaluation of defendant and asked defendant if he wished to proceed on that motion. Defendant responded "No, sir." Defendant's applications for continuance and Motion in Limine were denied. Hearing on the Motion to Suppress was deferred pending jury selection. The trial proceedings continued with defendant's representation being pro se.

Defendant stipulated to his prior convictions and was found by the court, beyond a reasonable doubt, to be a persistent offender.

I.

■ In reviewing the sufficiency of evidence, this court determines if there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Hogshooter*, 641 S.W.2d 820, 822 (Mo.App.1982). In *Hogshooter*, the court held "[w]here, as here, the conviction rests on circumstantial evidence, the circumstances must be 1) consistent with each other, 2) tend to prove defendant's guilt, 3) be consistent with the hypothesis of defendant's guilt, and 4) be inconsistent with the hypothesis of defendant's innocence." *Hogshooter*, 641 S.W.2d at 822. In *State v. Buffington*, 588 S.W.2d 512, 514 (Mo.App.1979), the court explained, that "[w]hile the circumstances must be such as are inconsistent with defendant's innocence, it is not necessary that they be absolutely conclusive of his guilt, and the evidence need not demonstrate an absolute impossibility of innocence."

■ Defendant's assertion that he was merely present at the scene where a stolen automobile was located ignores the totality of the evidence. Within one hour and 45 minutes after it was stolen, Mr. Glen Stapleton's blue 1980 Ford was discovered in the possession of Antone. As Officer Hogan approached the car, there were two

people kneeling behind the trunk. One was a man holding a pipe with a white cloth trying to pry the trunk open. The other was defendant, Antone, dressed as a woman, kneeling beside the car. As the officer walked toward the blue Ford, defendant started walking toward the officer and stated that he "picked this gentleman up to assist her in opening the trunk of the car because she lost the key." Antone stated that the blue Ford belonged to a friend in Independence. Thereafter, defendant gave false, improbable and evasive statements to those investigating the crime. In *State v. Plant*, 694 S.W.2d 751, 755 (Mo.App.1985) it was held that "[a]n attempt by an accused to deceive the police is another circumstance from which guilt may be inferred (Citation omitted.) Although isolated facts viewed individually may not support more than a suspicion of guilt, ... a conviction may rest upon accumulated, interdependent facts, no one of which, may create more than a suspicion of guilt." We believe that Antone's deceptive statements to the police, coupled with the fact that Antone was kneeling behind a stolen car while another man was prying the trunk open is sufficient evidence to support the conviction.

Defendant's reliance on *State v. Watson*, 350 S.W.2d 763 (Mo.1961) is misplaced. The facts there are distinguishable from the case at bar. In *Watson*, defendant stated that he knew nothing about the stolen merchandise, whose it was or where it came from. Antone was asked specifically by Detective Lawrence "how he came to be in possession of the 1980 blue Ford." Antone told three different stories as to his possession of the car. *See also State v. Spica*, 389 S.W.2d 35, 53 (Mo.1965), *cert. denied* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966).

Defendant cites *State v. Gonzales*, 533 S.W.2d 268 (Mo.App.1976), to support his argument that at most he merely was in joint possession. In *Gonzales*, the court noted that possession of stolen property is circumstantial evidence, but "if the possession relied on to convict the defendant is joint with another, there must, at least, be some other evidence more than mere pos-

session connecting the defendant with the offense." *Gonzales*, at 272. *Gonzales*, however is distinguishable from the present case. In *Gonzales*, defendant and his brother were riding together in an automobile when they were stopped by police on suspicion of robbery of a service station. Three one dollar silver certificates and seven "Barr certificates" (one dollar bills signed by Secretary of the Treasury "Joseph E. Barr") taken in the robbery were found in the defendant's brother's pocket. The court noted that "... the character of the possession is determined by the kind and character of the property stolen." *Gonzales*, at 273. The court found that the defendant's brother had "exclusive possession" of the stolen money since it was found in his trouser pockets. There was no evidence that the defendant had ever possessed the stolen money, had given it to his brother, or had claimed any ownership or domination over it. Nor was there any evidence to show joint possession by the defendant and his brother of the money.

In the case at bar, however, defendant was kneeling beside a man who was attempting to pry open the trunk of the car. Defendant indicated to Officer Hogan that he had possession of the car by saying that he [she] lost the key and the man was assisting him [her] in opening the trunk. Defendant also told Officer Hogan that the car belonged to his [her] friend in Independence. We think this is sufficient to establish that defendant was claiming sole possession of the stolen car. Even if defendant and the man prying open the trunk had joint possession, there was evidence other than mere possession of the car i.e., defendant's false and evasive answers to the police officers' questioning regarding the car.

Since defendant failed to file motions for acquittal at the close of the State's case or after all of the evidence, he must rely on plain error. Plain error is couched in terms of manifest injustice. If the evidence is sufficient, then there is no manifest injustice or miscarriage of justice.

*State v. Hubbard,* 659 S.W.2d 551 (Mo.App. 1983). There is sufficient evidence to support the conviction of defendant herein. Defendant's argument is without merit.

## II.

We next consider defendant's argument regarding the trial court's failure to appoint substitute counsel.

■ Motions to substitute counsel are directed to the discretion of the trial court. However, to be entitled to different counsel, defendant must show irreconcilable conflict. A total breakdown in communications is necessary. *State v. Harris,* 669 S.W.2d 579, 582 (Mo.App.1984).

■ Defendant argued that he believed his attorney did not have his best interest in mind. This reason falls far short of showing a total breakdown of communications and therefore, he was not entitled to substitute counsel. There was no irreconcilable conflict between Antone and Lacy. Antone even conferred with Lacy before making his decision to proceed pro se. From July 12, 1985 through November 11, 1985, Antone was told he would have to come into Lacy's office and help prepare his case. However, he failed to do so. With few exceptions, Antone showed only for court appearances, and never complained of counsel's representation. Criminal defendants have a constitutional right to proceed without counsel when they voluntarily and intelligently elect to do so. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Before permitting defendant to proceed pro se, the court examined defendant to determine his age and education. Antone was 29 years old. He spent two years at UCLA and one year at Morris Brown College in Atlanta, Georgia. He had fifteen years of education. In addition, he had been through three previous criminal jury trials. He had two previous felony convictions. While he never prepared a case, he stated that he had a basic knowledge of the rules of evidence. He stated that he could make an opening statement. The court continually told him it was in his best interest to have a lawyer. He was made fully aware of the scope of the trial, what lawyers are expected to do and the pitfalls of not being represented. He had a choice, he could have taken Lacy. He chose to proceed pro se.

■ Defendant has cited *State v. Harvey,* 692 S.W.2d 290, 292 (Mo. banc 1985) as authority for his argument that he was denied effective counsel. However, that case is distinguishable in that the attorney for the defendant literally boycotted the trial because he was unprepared and physically exhausted due to involvement in an earlier capital murder case. That attorney asked for a continuance of the date of trial and then refused to participate in the trial because the continuance had been denied. The defendant did not participate in counsel's conduct in that matter. The attorney's conduct, not the conduct of the defendant, was a denial of the defendant's sixth and fourteenth amendments right to effective assistance of counsel. A defendant has a right to effective assistance of counsel, but he is not entitled to any particular attorney, nor does he have the right to discharge counsel on the eve of trial for an insubstantial reason. *State v. Armstrong,* 624 S.W.2d 36 (Mo.App.1981).

■ Defendant also cites § 552.020, RSMo, for the proposition that the trial court failed to determine whether defendant was competent to stand trial. That particular statute gives the trial court authority to order a mental evaluation when it believes defendant to be mentally incompetent to stand trial. The trial court had ample opportunity to examine the defendant. There were vigorous discussions regarding the defendant's ability to proceed pro se. The court examined the defendant as a condition of acceptance of his voluntary waiver of counsel. It is clear from this record that there was no need for such an examination. More importantly if, during the course of the trial, it became obvious to the court that it was necessary, the

court has a continuing right and obligation to stop the trial and order a psychiatric examination. *Howard v. State*, 698 S.W.2d 23 (Mo.App.1985).

In the case at bar, there were no supporting affidavits, no evidence of past medical problems or no psychological or psychiatric reports. The trial court had no reasonable cause to believe that Antone had a mental defect or disease which would exclude his fitness to proceed. *See State v. Mares*, 486 S.W.2d 215, 216–17 (Mo.1972). Neither defendant's letters to the court regarding bond reduction nor the fact that he dressed as a woman were enough to establish incompetency to stand trial. The facts related by the defendant indicate more inadequacy and the lack of skills in asking questions or being able to formulate his trial strategy. These inadequacies do not indicate mental incompetence. *State v. Wells*, 701 S.W.2d 554, 556–57 (Mo.App.1985).

■ Defendant has suggested that there was some error in the failure of the court to appoint stand-by counsel. He cites several cases for this. However, a review of those cases indicates that there is no requirement that the trial court appoint stand-by counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed 2d 122, 128 (1984), cited by defendant indicates that court *may* appoint stand-by counsel without violating a defendant's right to present his own defense as guaranteed by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), subject to the invitation or agreement of the pro se defendant. Again, *McKaskle* is distinguishable from the case at bar and does not stand for the proposition that the trial court erred by failing to appoint stand-by counsel. While it may have been better for the defendant to have had stand-by counsel that decision rests within the sole discretion of the trial court. We can find no abuse of that discretion in this case.

Finally, it is clear from all of the above that § 600.051, RSMo 1978, permitting waiver of counsel, has been fully satisfied by the signing of the waiver by defendant.

The judgment of the trial court is affirmed.