Robert PARGO, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 27375.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 28, 2006.

---

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Victor J. Melenbrink, Jefferson City, for respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Robert Pargo ("Movant") claims his appellate counsel was ineffective and failed to act as a reasonably competent attorney would under the same or similar circumstances in two ways. First, he claims his attorney should have appealed the denial of an objection to testimony that was purportedly hearsay and, second, he asserts the attorney should have appealed the denial of a motion to suppress the identification of him by a witness on the basis of the procedures used to obtain the witness' identification. We find no error and affirm.

Movant was convicted by a jury of four counts of robbery in the first degree and one count of attempted robbery in the second degree. *State v. Pargo*, 109 S.W.3d 700, 700–701 (Mo.App. S.D.2003). The charges stemmed from a robbery of a Best Western motel on June 22, 2000, and four robberies at three Git–n–Go gas stations a day later. *Id.* at 701. His appeal of all five convictions was dismissed for failing to

preserve the only issue raised on appeal. *Id.* at 701–702. The issue raised in his direct appeal is not connected to the two issues now raised in Movant's claim of ineffective assistance of counsel.

■ The scope of review of the denial of a Rule 29.15[1] motion is whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Parker*, 886 S.W.2d 908, 933 (Mo. banc 1994). The motion court's determination is clearly erroneous when the appellate court has "a definite and firm impression that a mistake has been made." *Lyons v. State*, 39 S.W.3d 32, 36 (Mo. banc 2001). On review, the motion court's findings and conclusions are presumptively correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

To establish a violation of his right to effective assistance of counsel, Movant must show that his counsel failed to use the customary "skill, care, and diligence" that a reasonably competent attorney would exercise under similar circumstances and he was prejudiced thereby. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

> "To support a Rule 29.15 motion due to ineffective assistance of appellate counsel, strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it."

*Moss v. State*, 10 S.W.3d 508, 514 (Mo. banc 2000) (quoting *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994) (internal citations omitted)). Movant has the burden of proving grounds for relief by a preponderance of the evidence. *State v. Kreutzer*, 928 S.W.2d 854, 877 (Mo. banc 1996) (citing Rule 29.15(i)).

David Younoms stopped at a Git–n–Go convenience store located at Division and National in Springfield, Missouri, after his shift as a cab driver in the early morning hours of June 23, 2000. He pulled up to the pump and was ready to grab the gas nozzle when a Git–n–Go clerk, James Dilley,[2] came running outside yelling, "help, help, I'm being robbed." A man was running after Dilley, but Younoms initially thought the statement was a joke. Younoms tried to calm everybody down and Younoms, the alleged robber and Dilley went back into the store. Younoms thought there had been a misunderstanding between Dilley and the robber. The robber initially denied committing a robbery and said he was just there to buy a pack of cigarettes. There was a $5 bill lying on the counter and Dilley explained that a man had reached into the register when he had turned his back to get cigarettes. Younoms testified Dilley said, "it was all on camera, by him trying to reach across the counter to get in the till." Apparently, the robber then admitted that he was trying to rob the store but did not get anything; he then grabbed a pack of cigarettes off the counter, along with his $5 and tried to get out the door. The man was able to get past Younoms, but Younoms followed him out the door. The robber then pulled out a utility knife and said he was going to slice him up and warned Younoms not to get any closer. The robber ran down the alleyway.

---

**1.** All rule references are to Missouri Court Rules (2006), unless otherwise specified.

**2.** Younoms did not identify the clerk by name, but said that he used to see him every night when he filled up with gas. Rick Renfro, the loss prevention manager for Git–n–Go at the time, testified that James Dilley was the clerk on duty that evening at that location. James Dilley did not testify at trial.

■ Movant now claims his appellate counsel should have raised in his direct appeal purported trial court error in allowing testimony from witness David Younoms about what James Dilley stated on the evening of the robbery. The only statement to which an objection was made was Dilley statement, "help, help, I'm being robbed." The trial court overruled a hearsay objection to that statement on the basis that Dilly's statements constituted excited utterances. We find no merit to Movant's claim that appellate counsel should have raised an issue regarding that statement in the direct appeal because that statement was clearly an excited utterance.

■ Trial counsel failed to make a hearsay objection to Younoms' testimony that Dilley exclaimed that evidence of the robbery "was all on camera, by him trying to reach across the counter to get in the till." [3] Movant claims that this statement is inadmissible hearsay and its admission at trial denied him of his constitutional right to confrontation. Movant continues that reasonably competent appellate counsel would have asserted this claim on direct appeal. Movant concludes that because Movant's counsel failed to do so, he was denied effective assistance of appellate counsel. We find that the admission of the actual videotape of Movant reaching across the counter for the cash register renders Movant's claims moot. [4] Dilley's state-

ments were merely cumulative evidence and, as such, were not prejudicial.

■ Furthermore, we are not convinced that Movant's counsel was clearly ineffective for not raising a plain error claim that the statement about the robbery being on tape was prejudicial hearsay. The failure to raise a timely objection to the admission of evidence preserves nothing for appeal unless the court finds that Movant's substantial rights were affected and that "manifest injustice" or a "miscarriage of justice" has resulted from the failure to object. *State v. Gant,* 490 S.W.2d 46, 49 (Mo.1973); Rule 29.12(b). Appellate courts rarely find plain error in criminal cases if there is overwhelming evidence of guilt or the evidence is sufficient to support a conviction. *See State v. Gilmore,* 681 S.W.2d 934, 943 (Mo. banc 1984); *State v. Antone,* 724 S.W.2d 267, 272–73 (Mo.App. W.D.1987). The present case presents no exception to this general rule. To support Movant's conviction of four counts of robbery in the first degree and an attempted robbery,[5] the jury had testimony of eyewitnesses, a confession by Movant, and a videotape of all the crimes being committed. Additionally, "[a]ppellate counsel is not ineffective for failing to raise unpreserved allegations of error." *Tisius v. State,* 183 S.W.3d 207, 213 (Mo. banc 2006). Based upon existing law and the facts of the present case, the trial court was correct in denying Movant's

---

3. Trial counsel for Movant did object to the testimony, however, it was on the grounds that the question had been "asked and answered."

4. The jury saw videotapes (exhibits 20, 20A, 21, 21A, 22, and 22A) from each store and a composite videotape (exhibit 23; with all the footage relevant to the robberies from each store on one tape) was admitted at trial. The composite video was played for the jury.

5. The attempted robbery charge was based upon information that Movant reached into

the cash register at the Git–n–Go located at 1505 N. National and in the charge of James Dilley, attempting to take money. The robbery charges were based upon information that Movant forcibly stole money in the charge of Nate Gray, Ronald Wiley and Freda Liston, as well as forcibly stole cigarettes in the charge of James Dilley, and, in the course thereof, Movant displayed and threatened the use of what appeared to be a dangerous instrument.

claim that appellate counsel was ineffective. Point I is denied.

■ Movant claims in his second point that his appellate counsel should have raised on appeal the trial court's decision to overrule his motion to suppress an identification of Movant by Freda Liston. Liston was a clerk at another Git–n–Go, located at Battlefield and Fort, which was robbed later on June 23, 2000, in the early morning hours. After Liston told a patron of the store that she could not sell him beer at 4:30 a.m., he stepped upon the platform where she was standing. She told him he was not allowed up there but he kept walking towards her. She again told him he was not allowed there and that he had to leave. She felt something sharp, a box cutter blade, in her rib.

The man tried to open the register but it jammed. He ordered Liston to open it. When she did, he took all of the paper money and a handful of quarters, approximately $30. After he took the paper money, he said that he wanted the "big bucks." She told him that she did not have access to that money because the safe was turned off at night. The man took the money, then walked off the platform and out the door. Liston also testified that before leaving he stopped to tell her to lay face down on the floor, which she did not do because she was in shock. She did not see him get into a car, but after he left, she called the police.

When the police arrived, Officer Lori Everett took Liston's statement. Since Liston had seen the suspect's face, Officer Everett asked her to come to the police station to try to do a composite of the robber. While she was transporting Liston to the police station, Officer Everett received a call that other officers "might have the suspect in hand." Officer Everett told Liston they were going to look at somebody but it was extremely important for her to concentrate on the person's face and told her it was more important to say that she did not know if it was the person rather than to say "yes" if she was not sure. Liston was not to look at the suspect until told to do so by Officer Everett. When Officer Everett slowed down and told Liston to turn her head to the right, she saw the officers had a black man, Movant, on the side of the road in handcuffs. Officer Everett asked her if that was the man who had just held her up and Liston said it was "without any doubt." She recognized his jersey and his mustache. Liston had testified that the robber had a small mustache, whereas two police officers testified at the time of the arrest, Movant had a goatee. Liston also testified that Movant was wearing a mustard-colored football jersey with numbers on it. Movant was wearing a gold jersey with the letters "FUBU" on it.

The jury heard the testimony that later, at her deposition, Liston was asked to look at a photo line-up to see if she could identify the robber. At first, she said that none of them looked familiar although she could definitely eliminate the bottom three of the six photos. Movant was in the middle of the top row on the line-up. Liston thought the upper right hand photo looked like the robber but she also placed a circle beneath the top center photo because there was "something really familiar about his eyes." At trial, she identified Movant as the man who robbed her. She responded, "Yes," when asked, "Is that individual who robbed you in the early morning hours, is he in the courtroom?" When asked how she could be so sure, Liston said "his eyes."

■ Movant claims that the identification on the side of the road of the only black person on the scene was unduly suggestive and conducive to an unreliable identification. Identification procedures that are unduly suggestive and conducive

to an unreliable identification will be excluded only if a "substantial likelihood of irreparable misidentification" exists. *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc 1989). "[T]he crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness." *Id.* at 93. Movant argues that the roadside identification was so suggestive that reasonable appellate counsel would have recognized the issue and raised it on appeal whereas appellate counsel testified that her research showed that evidence of the "show-up" identification would not be sufficient to show suggestiveness under Missouri law.

The trial court found:

Movant's basic contention was that Freda Liston's in-court identification was improperly tainted by a "show up" made shortly after the robbery in which she identified Movant as the robber. Although the road side "show up" is not an ideal identification procedure, it has long been an acceptable and approved identification procedure. *See, e.g., State v. Clark,* 809 S.W.2d 139 (Mo.App.1991); *State v. Weaver,* [912] S.W.2d 499 (Mo. banc[ ] 1995); *State v. Bynum,* 680 S.W.2d 156 (Mo. banc[ ] 1984). Even the fact that Movant was in handcuffs does not invalidate the procedure. *State v. Moore,* 925 S.W.2d 466 (Mo.App.1996).

In this case, as noted by appellate counsel, the witness' identification of Movant when confronted with him in person was confident and sure. (HT, p. 20) Liston testified at trial that the officer transporting her had told her not to identify anyone unless she was certain. (Tr. P. 392) She testified that as soon as she saw him she knew it was him because of his clothing, his build and the mustache which she felt she saw both at the robbery and at the show up. (Tr.p. 393) When asked about her identification of two possible suspects in a photographic line-up, she explained that both had features similar to those of the robber. In the case of Movant's photograph, she identified his eyes as being the feature which most resembled those of the robber. (Tr.p.399) A previous witness, Ronald Wiley, had just testified to the jury that it was the nose and eyes of the robber which most drew his attention and on which his identification was based. (Tr.p.365) At trial, when asked to explain her certainty in identifying Movant as the robber, Liston stated it was his eyes. (Tr.p.400)

... In this case, Ms. Liston testified that she had been in the robber's presence ten or fifteen minutes, or what seemed to her to be a lifetime. (Tr.p. 389) Although she was instructed not to look at the robber, she testified that she did look at him and recognized him as someone who had been in the store earlier that day. (Tr.p.383, 388) The show up was held less than two hours after the robbery (Tr.p.393) and, as previously noted, when confronted with Movant in person, her identifications were certain and unequivocal. In *State v. Middleton,* 995 S.W.2d 443 (Mo. banc[ ] 1999) *cert. denied* 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999), the Missouri Supreme Court noted that identification testimony is usually admissible because "[c]ourts rely on the good sense and judgment of jurors for determining the trustworthiness of the identification."

Trial counsel cross examined Ms. Liston extensively on her tentative identifications when shown a photo array and pointed out the discrepancies between her description of the robber's facial hair and the appearance of Movant at the time of the show up as recalled by Officer Schroeder. The in-court identifi-

cation by Ms. Liston of Movant meets both the suggestibility test and the reliability test for admissibility of identification evidence as outlined in *Middleton, id.* Even if appellate counsel had asserted Movant's claim on appeal that the court erred in permitting the identification of Freda Liston, it is not likely that the claim would have been the basis for reversing judgment in the case and Movant was not prejudiced by appellate counsel's omission. *Franklin v. State,* 24 S.W.3d 686 (Mo. banc 2000)[.]

We find no clear error in the moving court's findings of fact and conclusions of law. Appellate counsel relied upon her professional judgment that Movant would not have been successful in a direct appeal on a claim that the roadside identification was inadmissible. Furthermore, the jury was given all of the facts concerning the identifications by Liston and Liston was extensively cross-examined about any deficiencies. We are not left with a definite and firm impression that a mistake has been made. Point II is denied.

The judgment is affirmed.

PARRISH and SHRUM, JJ., concur.