

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,                )
                                  )
            Respondent,           )   WD77357
                                  )
v.                                )   OPINION FILED:  March 29, 2016
                                  )
TAWANDA KUNONGA,                  )
                                  )
            Appellant.            )

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Charles H. McKenzie, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Mark D. Pfeiffer, Judge and
Karen King Mitchell, Judge

Tawanda Kunonga ("Kunonga") appeals his convictions of one count of first-degree murder and one count of armed criminal action following a jury trial.  Kunonga argues that the trial court erred (1) by failing to *sua sponte* intervene and prevent the admission of alleged propensity evidence; (2) by failing to *sua sponte* intervene and prevent the admission of alleged hearsay testimony; (3) by failing to grant a mistrial after the State introduced evidence that Kunonga invoked his right to remain silent; and (4) in allowing him to represent himself at trial because the waiver of counsel form he signed

prior to trial did not comply with section 600.051,[1] depriving him of his constitutional right to counsel.

We affirm.

### Factual and Procedural Background

Kunonga does not challenge the sufficiency of the evidence to support his convictions of murder in the first degree and armed criminal action. We view the evidence in the light most favorable to the verdict. *State v. Driskill*, 459 S.W.3d 412, 423 (Mo. banc 2015).

Latoya Hopkins ("Hopkins") was found dead in her home on June 15, 2010. She had been brutally beaten and stabbed. An autopsy revealed multiple blunt force and stab wounds.

Hopkins was discovered by her sister, Aisha, and her sister's boyfriend. Aisha had become concerned when Hopkins missed an appointment to have her hair done on June 14, 2010, in preparation for a trip to New York planned for June 15, 2010. When Aisha and her boyfriend entered Hopkins's home through an open basement window, they discovered Hopkins's body on a bedroom floor. Investigators described the violent encounter that had occurred in the home. There was blood and blood spatter throughout the house on walls, furniture, floors, and other items. A car parked in the basement garage contained blood spatter. The car was parked directly below the spot where Hopkins's body was found. Hopkins's blood had dripped through the ceiling onto the floor by the car. There was a strong odor of a deceased body in the home. The

---

[1] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

investigation led to the discovery of a meat tenderizer and a steak knife as the likely murder weapons. DNA found on the handle of the meat tenderizer was matched to both Kunonga and Hopkins. DNA testing of tissue found on the mallet portion of the meat tenderizer showed Hopkins as a major contributor and Kunonga as a minor contributor. Blood found on the handle of a steak knife showed Hopkins as a major DNA contributor and Kunonga as a minor DNA contributor. A mixture of Kunonga's and Hopkins's DNA was found in several blood samples from throughout the house. Fingernail scrapings taken from Hopkins matched Kunonga as a minor contributor. Kunonga's palm print was found in the blood stains discovered on the outside of the car parked in the basement garage. It appeared to investigators that some effort had been made to clean portions of the crime scene.

Hopkins was last seen on June 13, 2010. A neighbor was walking her dog on that day and cut through Hopkins's yard. The neighbor saw Kunonga standing with Hopkins outside the house by the garage. Kunonga and Hopkins had been in an on-and-off relationship for about four years. By June 2010, the relationship had ended and Hopkins was in a new relationship. Hopkins's planned trip to New York on June 15, 2010, was to meet a man she had befriended online.

At approximately 6:00 p.m. on June 14, 2010, Kunonga showed up at a friend's house. The friend had last seen Kunonga about a week to two weeks prior and observed when Kunonga showed up on June 14, 2010, that he had shaved off his long dreadlocks. The friend noticed that Kunonga had injured his hand. Kunonga told the friend he had

3

been bitten by a dog. Kunonga asked to take a shower and for a trash bag to get rid of some old clothes.

Near the same time frame, another acquaintance of Kunonga's saw him on a Metro bus and at first did not recognize him because his dreadlocks were gone. Kunonga's right hand and forearm were bleeding and he had cuts and scratches on his face, neck, and shoulders. When the acquaintance asked what had happened, Kunonga laughed and said, "The bitch wouldn't let go so I did what I had to do." Kunonga told the acquaintance he was going to the hospital to get stitched up, then "going underground."

Kunonga went to Research Medical Center shortly before 11:30 p.m. on June 14, 2010. He gave a false name to be treated and told hospital personnel he had been injured the previous night breaking up a fight.

On June 21, 2010, after Hopkins's body was found, Raytown detectives saw Kunonga walking down a street in downtown Kansas City. Kansas City police officers were dispatched to the scene. When Kunonga was stopped, his right hand was bandaged with gauze that was soaked in blood. Kunonga told authorities he had been involved in a robbery four or five days earlier. Kunonga initially gave officers a false name and date of birth. Kunonga was arrested and taken to the Raytown police station where he was given, and waived, the *Miranda*[2] warnings. His interview was videotaped.

A public defender entered an appearance to represent Kunonga on July 1, 2010. In July 2011, the public defender filed a motion to withdraw as counsel, alleging that Kunonga had advised that he wanted to represent himself. Kunonga filed a motion to

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1996).

discharge counsel on August 26, 2011. Kunonga's motion raised numerous complaints, including that the public defender was unwilling to zealously defend Kunonga against the charges and that the public defender had not complied with Kunonga's requests to take certain actions.

The trial court held a hearing on Kunonga's motion on September 23, 2011. After Kunonga stated his complaints with the public defender, the trial court informed Kunonga that if he discharged his public defender, another one would not be appointed for him, leaving him the option of hiring an attorney or representing himself. Kunonga acknowledged that he understood his options and then stated: "I feel like since my resolve to discharge [my public defender] is immutable, my only option is to represent myself. And the only reason is I don't have the funds to retain private counsel."

After putting Kunonga under oath, the trial court explained to Kunonga that he had a right to an attorney, that the public defender's office assigns attorneys for defendants who need representation, and that Kunonga's only option if dissatisfied with his appointed attorney was to hire an attorney or represent himself. Kunonga responded that he understood and responded affirmatively when the trial court asked him if he was up to the challenge of representing himself. Kunonga denied that anyone had threatened or coerced him into making the decision to represent himself and said that he had thought long and hard about his decision.

The trial court explained the charges filed to Kunonga and the range of punishment for each charge. The trial court explained that if Kunonga was found guilty, then the trial court would likely impose a prison sentence. The trial court also

5

extensively explained trial procedure to Kunonga, including the standard of proof at trial, how objections are lodged during trial, and how to preserve errors for appeal. The trial court noted that it would be harder for Kunonga to subpoena witnesses in preparation for trial and that it would be harder to testify at trial since he was representing himself. The trial court asked Kunonga if he could figure everything out on his own without the assistance of an attorney and Kunonga stated: "I believe I can." Then the following exchange took place:

> Trial Court: I've told you how difficult it may be for you and that it would behoove you to either make peace with [your assigned public defender] or find a way to retain private counsel, but you want to go ahead and proceed on your own; is that right?
>
> Kunonga: Yes.

After Kunonga said that he understood the likelihood of a prison sentence if found guilty, that he was foreclosing the opportunity to later claim ineffective assistance of counsel, and that he understood a public defender has many more resources to mount a defense, the trial court again asked Kunonga whether he wanted to represent himself:

> Trial Court: Mr. Kunonga, are you comfortable with the decisions you've made?
>
> Kunonga: Yeah, I am comfortable.
>
> Trial Court: So you want me to allow [your assigned public defender] to withdraw and allow you to proceed on your own; is that correct?
>
> Kunonga: Yes, please.

The trial court then presented Kunonga with a written waiver of counsel form which Kunonga signed.

Sometime later, Kunonga filed a motion for the appointment of hybrid counsel not associated with the public defender's office. During a hearing on the motion, Kunonga acknowledged his understanding that he was entitled as an indigent to have an attorney appointed for him but that he did not get to choose his attorney. Kunonga also acknowledged that he did not have a constitutional right to hybrid counsel. After the trial court again explained to Kunonga the charges against him and possible punishments, trial procedure, and that it was not a good decision to represent himself, the trial court asked Kunonga if he still wanted to represent himself. Kunonga replied: "Yes sir. I unequivocally declare my intention to represent myself in this matter."

Kunonga's case proceeded to a jury trial. An edited version of Kunonga's videotaped interview was played for the jury. Kunonga did not testify in his own defense but called numerous witnesses to establish that he could not have killed Hopkins because his right hand was disabled. Kunonga was convicted. The trial court sentenced Kunonga to consecutive sentences of life imprisonment without parole for murder in the first degree and life imprisonment for armed criminal action.

Kunonga timely appealed.

## Analysis

Kunonga presents four points on appeal. Kunonga claims that the trial court erred (1) by failing to *sua sponte* intervene and prevent the admission of alleged propensity evidence; (2) by failing to *sua sponte* intervene and prevent the admission of alleged hearsay testimony; (3) by failing to grant a mistrial after the State introduced evidence that Kunonga invoked his right to remain silent; and (4) because the waiver of counsel

form he signed prior to trial did not comply with section 600.051, depriving him of his constitutional right to counsel.

## Points One and Two

In his first two points, Kunonga argues that the trial court erred when it failed to *sua sponte* intervene and prevent the admission of alleged propensity evidence and alleged hearsay testimony. Kunonga requests plain error review of points one and two because he did not object to the admission of this evidence at trial.

"Non-preserved issues are reviewed for plain error, if the error resulted in manifest injustice or a miscarriage of justice." *State v. McClendon*, 477 S.W.3d 206, 216 (Mo. App. W.D. 2015) (internal quotations omitted).

> Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. Claims of plain error are reviewed under a two-prong standard. In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear. If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error. A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice.

*Id.* at 216-17. "To hold that a miscarriage of justice or a manifest injustice occurred, we must determine that there is a reasonable probability that the jury's verdict would have been different, had the error not taken place." *State v. Roper*, 136 S.W.3d 891, 903 (Mo. App. W.D. 2004). "Appellate courts rarely find plain error in criminal cases if there is overwhelming evidence of guilt or the evidence is sufficient to support a conviction."

8

*Pargo v. State*, 198 S.W.3d 685, 688 (Mo. App. S.D. 2006) (citing *State v. Gilmore*, 681 S.W.2d 934, 943 (Mo. banc 1984)).

"Uninvited interference by the trial judge in trial proceedings is generally discouraged, as it risks injecting the judge into the role of a participant and invites trial error." *Roper*, 136 S.W.3d at 902. "[T]he trial court should only take independent action in the most unusual and exceptional circumstances." *Id.* at 903. "Thus, we will rarely find plain error where a trial court has failed to take *sua sponte* action with regard to the proceedings." *Id.*

Kunonga claims that the testimony of several witnesses at trial constituted inadmissible evidence of prior bad acts. "Evidence of prior bad acts is not admissible for the purpose of showing the propensity of the defendant to commit the charged crimes." *State v. Tolliver*, 101 S.W.3d 313, 315 (Mo. App. E.D. 2003) (citing *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998)). "Evidence of prior bad acts may be admissible, however, if it is logically relevant in that it has some tendency to establish directly the defendant's guilt of the charged crimes and if its probative value outweighs its prejudicial effect." *Tolliver*, 101 S.W.3d at 315. "In cases of murder . . . prior misconduct by the defendant toward the victim is logically relevant to show motive, intent, or absence of mistake or accident" but "[s]uch evidence is only admissible for those purposes, however, if the defendant puts motive, intent, mistake or accident at issue in the case." *Id.* (citing *State v. Conley*, 873 S.W.2d 233, 237 (Mo. banc 1994)).

During the trial, Aisha's boyfriend, Leon Rush ("Rush"), testified that Kunonga had been violent toward Hopkins in the past. Aisha testified that Hopkins told her that

9

Kunonga had entered Hopkins's home without permission. Detective Thomas Saccardi ("Saccardi") testified that he had previously interviewed both Kunonga and Hopkins about a domestic violence incident between the two of them involving a knife that occurred on February 2, 2010. Hopkins's neighbor, Christopher Villines ("Villines"), testified that in February 2010 he saw Kunonga break into Hopkins's house through the basement. Kunonga argues that the trial court plainly erred in admitting all of this testimony in the State's case-in-chief because it was inadmissible prior bad act evidence as he had not yet injected motive or intent into the case. Kunonga claims the trial court's error constituted a manifest injustice because there is a reasonable probability that the evidence contributed to the jury's verdict. We disagree.

Even if the trial court erred by *sua sponte* failing to interject to refuse the admission of the aforesaid testimony of prior bad acts (a determination we need not make), Kunonga cannot prove that a miscarriage of justice or manifest injustice occurred. Kunonga must prove that the jury's verdict would have been different but for the inadmissible evidence, not merely that the inadmissible evidence contributed to the jury's verdict. *Roper*, 136 S.W.3d at 903. Kunonga cannot sustain this burden because the evidence of his guilt was overwhelming. Kunonga's DNA was found on the likely murder weapons, on several blood samples throughout Hopkins's house, and on fingernail scrapings taken from Hopkins. Kunonga's palm print was found in blood stains on the outside of the car found in the basement garage. A day after the murder, Kunonga cut off his dreadlocks, asked a friend if he could take a shower, and wanted a trash bag to get rid of some clothes. Kunonga also told an acquaintance, who asked him what had happened

10

when he saw Kunonga's bleeding right hand and scratched face, neck, and shoulders, that "The bitch wouldn't let go so I did what I had to do" and that he was "going underground" after going to the hospital. "Appellate courts rarely find plain error in criminal cases if there is overwhelming evidence of guilt or the evidence is sufficient to support a conviction." *Pargo*, 198 S.W.3d at 688. The trial court did not plainly err in admitting the testimony of Rush, Aisha, Saccardi, or Villines at trial.

Kunonga also argues that the trial court erred in admitting the testimony of Rush, Aisha, and Saccardi because it was inadmissible hearsay. "Hearsay is an out-of-court statement offered for the truth of the matter asserted." *State v. McFadden*, 391 S.W.3d 408, 431 (Mo. banc 2013). "Not all out-of-court statements are hearsay[, however,] in that[,] to constitute hearsay[,] the statement must be offered for the truth of the matter asserted." *State v. Johnson*, 477 S.W.3d 218, 227 (Mo. App. W.D. 2015) (internal quotation omitted). "Accordingly, [i]f an out-of-court statement is not offered to prove the truth of the matter asserted but instead is offered to prove relevant background, then the statement is not inadmissible hearsay." *Id.* "Statements made by an out-of-court declarant that explain subsequent conduct are admissible as supplying relevant background and continuity." *Id.*

Aisha testified about the circumstances that led to the discovery of Hopkins's body. Aisha testified that she was concerned about Hopkins and decided to go to Hopkins's house with Rush on the morning of June 15, 2010. Aisha called 911 on the way. Aisha and Rush arrived after the police, and Hopkins's house was locked. Aisha testified that she was trying to figure out a way to get into the house when she

11

remembered that Hopkins told her that Kunonga had previously entered her house without permission. Aisha then found a window open. Rush entered the house through the window, let Aisha in, and the two of them eventually found Hopkins's body. Later in the trial, Saccardi testified that he reviewed police reports about the incident between Kunonga and Hopkins on February 2, 2010, in which Hopkins told other officers that she had been punched by Kunonga and that a knife had been involved in the incident. Saccardi testified that he was trying to contact Kunonga to determine how both he and Hopkins had been injured in the February 2010 incident, stating "I was trying to get a better understanding, a better mental picture as to what had happened." Kunonga argues that the testimony of Rush, Aisha, and Saccardi was hearsay and that its admission was a manifest injustice, warranting a new trial. We disagree.

First, Rush did not testify to an out-of-court statement, so his testimony is not hearsay. Second, Aisha's and Saccardi's testimony arguably was admitted to explain the subsequent conduct of each--Aisha attempting to enter Hopkins's house and Saccardi attempting to gain more information about the February 2010 incident between Kunonga and Hopkins. But even if Aisha's and Saccardi's testimony should not have been admitted, no miscarriage of justice or manifest injustice occurred. Kunonga, again, has failed to prove that the jury's verdict would have been different but for the testimony of Aisha and Saccardi given the overwhelming evidence of his guilt. *Roper*, 136 S.W.3d at 903. The trial court did not err in admitting the testimony of Rush, Aisha, or Saccardi.

Points one and two are denied.

12

**Point Three**

In his third point, Kunonga argues that the trial court erred when it failed to grant a mistrial after the State introduced evidence that Kunonga allegedly invoked his right to remain silent during a police interrogation.

"This Court reviews a trial court's refusal to grant a mistrial for abuse of discretion." *McClendon*, 477 S.W.3d at 215. "An abuse of discretion is found when the trial court's ruling is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation omitted). "A mistrial is a drastic remedy that should only be granted when the prejudice to the defendant cannot be removed in any other way." *Id.*

"If a person subjected to custodial interrogation wishes to revoke his or her waiver of the right to remain silent, he or she is under an obligation to communicate this revocation in a clear and intelligible fashion." *State v. Wolf*, 91 S.W.3d 636, 643 (Mo. App. W.D. 2002). "We consider the defendant's statements as a whole in determining whether they indicate an unequivocal decision to invoke the right to remain silent." *Id.* Evidence of a defendant invoking his right to remain silent during an interrogation and the termination of that interrogation "cannot be used to incriminate a defendant." *State v. Ervin*, 398 S.W.3d 95, 100 (Mo. App. S.D. 2013) (citing *State v. Dexter*, 954 S.W.2d 332, 338 (Mo. banc 1997)).

After Kunonga was arrested on June 21, 2010, he was taken to the Raytown Police Department where he waived his *Miranda* rights and spoke to detectives for nearly two

13

hours. The interrogation was videotaped, and an edited portion of the interrogation was played at trial. Based on an agreement with the trial court, the State agreed not to play the portion of the interrogation where Kunonga invoked his *Miranda* rights. Between the 1:52:57 and 1:52:59 marks on the videotape, Kunonga said: "Could I please practice my right to . . . ." The State stopped the videotape at that point.[3] Immediately after Kunonga's statement, between the 1:53:00 and 1:53:08 marks, the following exchange took place:

> Kunonga: -- cause I don't know what's going on and I don't know if I might have been set up.
>
> Detective: What do you mean practice your rights?
>
> Kunonga: Uh --

This exchange was not played for the jury. The videotape ended at the 1:53:08 mark. Kunonga objected at trial and requested a mistrial, arguing that the State allowed the videotape to play until the point that he invoked his *Miranda* rights. The trial court overruled Kunonga's objection. Kunonga argues that the trial court should have declared a mistrial because the State introduced evidence of Kunonga invoking his *Miranda* rights. We disagree.

The jury did not hear Kunonga invoke his *Miranda* rights. The portion of the videotape played for the jury--Kunonga's statement "Could I please practice my right to"--was not a clear and unequivocal statement that Kunonga was invoking his right to

---

[3] Kunonga contends that it is unclear when the State actually stopped the video at trial, noting that the trial court said the last statement it heard before the tape was stopped was Kunonga saying "I invoke my rights." [Tr. 774] The trial court, however, later confirmed outside the presence of the jury that the last words played to the jury were "Could I please practice my right to" [Tr. 783] and it is clear from the videotape that Kunonga did not say "I invoke my rights" right before the State stopped the videotape.

14

remain silent. *Wolf*, 91 S.W.3d at 643. Kunonga's next statement, which was not played for the jury, was not an invocation of the right to remain silent but instead an expression of purported confusion that Kunonga did not "know what was going on" and of speculation that he "might have been set up." Given that Kunonga's entire statement-- "Could I please practice my right to -- cause I don't know what's going on and I don't know if I might have been set up"--did not invoke his right to remain silent, we cannot say that playing the first part of that statement--"Could I please practice my right to"-- was impermissible. The trial court did not abuse its discretion in declining to declare a mistrial.

Point three is denied.

## Point Four

In his fourth point, Kunonga argues that the trial court erred because the waiver of counsel form he signed did not strictly comply with the requirements of section 600.051, rendering his waiver of counsel unknowing and involuntary in violation of the Sixth Amendment right to counsel. The State concedes that "the written waiver used in this case . . . did not strictly follow the statutory requirements" of section 600.051. [Respondent's Brief, p. 47] The State argues, however, that the error is subject only to plain error review, and that because the trial court confirmed on the record that Kunonga understood each of the subjects section 600.051 requires that were omitted from Kunonga's written waiver, the conceded statutory violation did not result in a manifest injustice or miscarriage of justice.

15

The issue presented by Kunonga's fourth point on appeal is not as straight forward as it appears. Plain error review of a section 600.051 violation remains subject to the settled principle that the State bears the burden to prove the right to counsel has been waived. The proper interplay between plain error review of error involving the waiver of counsel, and the State's burden of proof on that issue, has not yet been expressly addressed in Missouri.

### Standard of Review/Burden of Proof

We agree that Kunonga failed to preserve his claim of error for appellate review. "A constitutional claim must be made at the first opportunity to be preserved for appellate review." *State v. Murray*, 469 S.W.3d 921, 925 (Mo. App. E.D. 2015) (citing *State v. Fassero*, 256 S.W.3d 109, 117 (Mo. banc 2008)).

Kunonga did not object during trial that his written waiver of counsel form failed to strictly comply with section 600.051, a statute that mandates the content of such forms. The Eastern District recently held that a self-represented defendant's failure to object at trial regarding the knowing, voluntary, and intelligent nature of his waiver of the right to counsel is generally excused. *See Murray*, 469 S.W.3d at 925 (holding that self-represented defendant cannot be expected to object that a waiver-of-counsel was not voluntary because of alleged inadequacies in an on-the-record inquiry designed to determine whether waiver is knowing, voluntary, and intelligent).[4] Although this may be

---

[4] *Cf. State v. Black*, 223 S.W.3d 149, 154 (Mo. banc 2007), which holds that where a defendant's request to waive counsel is denied, trial counsel's failure to object that the defendant's right to self-representation has been denied does not yield unpreserved error. Where a defendant has "unequivocally demanded to proceed pro se, the exercise of his right to do so cannot be dependent upon the renewal of that position by the very counsel he sought to dismiss." *Id.*

16

the proper rule where the error involves the sufficiency of a required *Faretta*[5] hearing, the rule does not apply to a claim of error involving noncompliance with section 600.051. There is no rational basis for excusing a self-represented defendant from timely objecting that a written waiver of counsel form fails to comply with section 600.051, an error that is evident upon simple comparison of the written form to the statute. *See State v. Hunter*, 840 S.W.2d 850, 860 (Mo. banc 1992) (holding that where no objection to trial court's "failure to obtain a written waiver of counsel" was made at trial, despite "ample opportunity to do so," "the standard for reviewing the claim on appeal is that of plain error").

Even if Kunonga's failure to raise the violation of section 600.051 at trial could be excused, Kunonga was nonetheless bound to raise this claim in a motion for new trial. Rule 29.11(d).[6] Kunonga's *pro se* motion for a new trial argued that his waiver of counsel was not voluntary because he was promised hybrid counsel and because he was forced to represent himself due to his appointed counsel's "misconduct and . . . resultant irreconcilable conflict." Kunonga's motion for new trial did not argue that his waiver of counsel was not voluntary because the written waiver form he signed failed to comply with section 600.051. A "point raised on appeal must be based upon the same theory . . .

---

[5] *Faretta v. California*, 422 U.S. 806 (1975). As we discuss, *infra*, a *Faretta* hearing is required to determine that a defendant who wishes to waive his right to counsel understands the perils of self-representation. The litany in a *Faretta* hearing is not mandated but must be sufficient to establish that the waiver of counsel is "made intelligently and knowingly [based] on the 'particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" *State v. Hunter*, 840 S.W.2d 850, 858 (Mo. banc 1992) (quoting *Wilkins v. State*, 802 S.W.2d 491, 501 (Mo. banc 1991) *cert. denied*, 502 U.S. 841 (1991)).

[6] All citations to the Rules are to *Missouri Court Rules Volume I--State* (2015) as supplemented.

as preserved in the motion for new trial." *State v. Lewis*, 243 S.W.3d 523, 525 (Mo. App. W.D. 2008). Kunonga's issue on appeal is not preserved for review.

An issue that is not preserved for appellate review is subject to only plain error review. Rule 29.12(b); Rule 30.20. "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 29.12(b); Rule 30.20. "Review for plain error involves a two-step process. The first step requires a determination of whether the claim of error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)) (internal and other citations omitted). "All prejudicial error, however, is not plain error, and '[p]lain errors are those which are 'evident, obvious, and clear.''" *Baumruk*, 280 S.W.3d at 607 (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999) (internal citation omitted). "If plain error is found, the court must then proceed to the second step and determine 'whether the claimed error resulted in manifest injustice or a miscarriage of justice.'" *Baumruk*, 280 S.W.3d at 607-08 (quoting *Scurlock*, 998 S.W.2d at 586).

Plain error review remains subject, however, to the State's burden to prove that an unrepresented defendant waived the right to counsel. Where there is an "unquestioned absence of counsel, the [State] ha[s] 'the burden of coming forward with evidence of waiver.'" *State ex rel. Garrett v. Gagne*, 531 S.W.2d 264, 268 (Mo. banc 1975) (quoting *Morris v. State*, 456 S.W.2d 289, 293 (Mo. 1970)); *see also City of St. Peters v. Hodak*,

18

125 S.W.3d 892, 895 (Mo. App. E.D. 2004) ("The burden to prove that a waiver of counsel is valid belongs to the state.") (citing *State v. Kilburn*, 941 S.W.2d 737, 739 (Mo. App. E.D. 1997)); *State v. Schnelle*, 924 S.W.2d 292, 296 (Mo. App. W.D. 1996) ("[I]t is the State's burden to prove that [a] defendant 'knowingly and intelligently' waived the right to counsel."). "[O]nce the defendant has shown that he has not been accorded [counsel], the prosecuting official has the burden of going forward with the evidence of waiver. If this burden is met, the burden then falls upon the [defendant] to prove by a preponderance of the evidence that the waiver was involuntary or unintelligent." *City of Kansas City v. Davis*, 629 S.W.2d 631, 634 (Mo. App. W.D. 1982) (discussing *Morris*, 456 S.W.2d at 293). The State's burden to prove a waiver of counsel persists in all proceedings and not just on direct appeal from preserved error. *Morris*, 456 S.W.2d at 293 (postconviction proceeding); *City of Kansas City*, 629 S.W.2d at 634 (proceeding seeking to vacate a guilty plea); *Meller v. Swenson*, 309 F. Supp. 519, 524 (W.D. Mo. 1969) (habeas proceeding); *Garrett*, 531 S.W.2d at 268 (habeas proceeding).

No Missouri case has expressly addressed the intersection of the State's burden to prove a waiver of counsel with plain error review of a section 600.051 violation. We explain that relationship in this case as a matter of first impression. We conclude that a violation of section 600.051 satisfies the first step of plain error review because section 600.051 protects a fundamental constitutional right, and compliance with section 600.051 is essential to the State's ability to sustain its burden to establish a waiver of counsel. And we conclude that a violation of section 600.051 constitutes a manifest injustice or miscarriage of justice as required by the second step of plain error review because a

19

violation of the right to counsel is structural error that is presumed to infect the entirety of a trial. However, we also conclude that when a violation of section 600.051 is subject to plain error review, the State can overcome the existence of a manifest injustice or miscarriage of justice by objectively demonstrating that the violation of section 600.051 had no impact on a defendant's knowing, voluntary, and intelligent waiver of counsel.

### *A Violation of Section 600.051 Establishes the First Step of Plain Error Review*

Section 600.051.1 provides:

Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court, *providing further that the waiver contains at least the following information* which the defendant has read or which has been read to the defendant *before the signing thereof*:

(1) That the defendant has been charged with the offense of .......... (nature of charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is .......... imprisonment in jail and a fine in the amount of .......... dollars or by both imprisonment and fine. That the minimum possible sentence is .......... imprisonment in jail or by a fine in the amount of .......... dollars or by both such confinement and fine;

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6)     That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

(Emphasis added.)  The written waiver form Kunonga signed provided:

1.     I give this waiver knowingly, intelligently and voluntarily;

2.     I am not acting under duress or mental incapacity;

3.     I understand the charges brought against me;

4.     I understand the possible defenses to the charges brought against me;

5.     I understand that I have the right to be represented by counsel at a trial on these charges;

6.     I understand that I have the right to appointed counsel even if I cannot afford an attorney;

7.     I have been informed of the maximum and minimum sentences for the charges brought against me if convicted;

8.     I understand that it is usually a mistake to proceed without a lawyer and that at trial I will be expected to abide by the rules of evidence and the rules of Criminal Procedure, pursuant to the laws of the State of Missouri;

9.     I understand that I will not receive and under the law am not entitled to any special treatment or help from the Court simply because I am representing myself in this case;

10.    I understand that I will be limited to the legal resources that are available to me while I am in custody and that I am not entitled to additional library privileges simply because I have chosen to represent myself; I also understand that a lawyer has fewer restrictions in researching and preparing for my defense;

11.    I understand that if I am disruptive in the courtroom that the court can terminate my self representation and remove me from the courtroom in which case the trial could continue without my presence;

12.    I understand that the State will not go any easier on me or give me any special consideration simply because I am representing myself and will in fact try the case as if I were an experienced attorney;

21

13. I understand that if I am convicted, that I cannot claim on appeal that my own lack of legal knowledge and understanding or skill will constitute a basis for a new trial. In other words, I cannot claim ineffective assistance of counsel;

14. l understand the dangers and disadvantages of representing myself in this matter and I have no questions about these dangers and disadvantages and am freely and voluntarily requesting that I be allowed to represent myself in my case.

A simple comparison of Kunonga's written waiver form to section 600.051 reveals its deficiencies. Kunonga's written waiver of counsel form did not include the nature of the charges against Kunonga, (section 600.051.1(1)); that Kunonga had a right to trial and a right to a trial by jury, (section 600.051.1(2)); the possible maximum and minimum sentences for the charges against Kunonga, (section 600.051.1(3)); that Kunonga was aware that any recommendations by a prosecuting attorney or other prosecuting official would not be binding on the judge and that any such recommendations may or may not be accepted by the judge, (section 600.051.1(3)); or that if Kunonga pleaded guilty or was found guilty, the judge would most likely impose a sentence of confinement (section 600.051.1(5)).[7]

There is a strong presumption against the waiver of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *State v. Davis*, 934 S.W.2d 331, 334 (Mo. App. E.D. 1996). Because section 600.051 imposes an express duty on the trial court to secure a defendant's signature on a compliant written waiver of counsel form, the trial court's

---

[7]As we explain, *infra*, in our ruling today, our Missouri Supreme Court in *Peterson v. State*, 572 S.W.2d 475 (Mo. banc 1978), is unequivocal about the necessity to utilize a waiver of counsel form that **strictly** comports with the requirements of section 600.051. Since just such a "form" document is readily available, *see* 27 Mo. Prac., Criminal Practice Forms section 3.11 (2d ed.), there is no excuse for failing to use a strictly compliant form.

failure to secure Kunonga's signature on a form that strictly complied with section 600.051 was evident, obvious, and clear error.

A violation of section 600.051 also facially establishes a substantial ground for believing that a manifest injustice or miscarriage of justice has resulted given the relationship between section 600.051 and the constitutional right to counsel and to self-representation. "The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence.'" *State v. Black*, 223 S.W.3d 149, 153 (Mo. banc 2007). "In *Faretta v. California*, the United States Supreme Court recognized that the federal Sixth Amendment right to counsel 'implicitly embodies a correlative right to dispense with a lawyer's help.'" *Black*, 223 S.W.3d at 153 (quoting *Faretta v. California*, 422 U.S. 806, 814 (1975)). "The right of self-representation so implied into the Sixth Amendment is applicable to the states by way of the Due Process Clause of the Fourteenth Amendment, and prevents a state from forcing upon a defendant unwanted counsel." *Black*, 223 S.W.3d at 153 (citing *Faretta*, 422 U.S. at 836).

The right to counsel and the right to self-represent are in obvious tension. "Because a defendant who is allowed to proceed pro se may argue on appeal that his right to counsel was improperly denied, ambiguous requests are not sufficient to assert the right." *Black*, 223 S.W.3d at 153 (citing *State v. Hampton*, 959 S.W.2d 444, 447 (Mo. banc 1997)). "'The probability that a defendant will appeal either decision of the trial judge underscores the importance of requiring a defendant who wishes to waive his right to counsel to do so explicitly and unequivocally.'" *Black*, 223 S.W.3d at 153 (quoting

23

*Hampton*, 959 S.W.2d at 447) (itself quoting *Hamilton v. Groose*, 28 F.3d 859, 863 (8th Cir. 1994)).

Given the highly sensitive nature of a ruling on whether to grant a criminal defendant's request to waive the right to counsel and to exercise the right to self-representation, "[a] thorough evidentiary hearing must support the trial court's ruling upon a defendant's timely and unequivocal request to proceed pro se." *Black*, 223 S.W.3d at 155. At a minimum, this hearing must establish, as required by *Faretta*, that "the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights." *Id*. at 156 (citing *Faretta*, 422 U.S. at 835). The required goal of a *Faretta* hearing is to ensure that "a defendant's waiver [of the right to counsel] is knowing and intelligent." *Black*, 223 S.W.3d at 155.

There is no specific litany required for a *Faretta* hearing. *State v. Schnelle*, 924 S.W.2d 292, 296 (Mo. App. W.D. 1996).[8] Whether a *Faretta* hearing establishes that a waiver of counsel is knowingly and intelligently made depends on "the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Hunter*, 840 S.W.2d at 858. A trial court can only make certain that a defendant has knowingly, voluntarily, and intelligently waived the right to counsel

---

[8] Over time, Missouri courts have concluded that a *Faretta* hearing should at a minimum reflect that an accused: has the "capacity to make an intelligent decision and his knowledge of his own situation;" is not "acting under duress, does not suffer from a mental incapacity, is literate and is minimally familiar with the trial process, including possible defense to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged;" "understands the possible penalties if convicted;" "understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights;" "understands that he has the right to counsel, including appointed counsel if he is indigent;" is advised that "it is usually a mistake to proceed without a lawyer and then specifically warn[ed] . . . about the dangers and repercussions of that decision;" and is informed of "the nature of the charges against him." *Black*, 223 S.W.3d at 154, 156 (internal quotation omitted).

24

"from a penetrating and comprehensive examination of all the circumstances . . . ." *State v. Tilley*, 548 S.W.2d 199, 200 (Mo. App. St. L. Dist. 1977).

It is no coincidence that section 600.051 was enacted in 1976, one year after *Faretta* was decided. "[T]he Missouri General Assembly created a procedure through which th[e] waiver of counsel could be effectuated." *State v. Keeth*, 203 S.W.3d 718, 728 (Mo. App. S.D. 2006). As the Supreme Court observed in *May v. State*, 718 S.W.2d 495, 497 (Mo. banc 1986), "the purpose of section 600.051 . . . is to provide objective assurance that the defendant's waiver is knowing and voluntary." *May*, 718 S.W.2d at 497. Unlike a *Faretta* hearing as to which there is no required litany, section 600.051 is very specific in its identification of the minimum required content of a written waiver of counsel form.

There are thus two requirements which must be satisfied in Missouri before a trial court can conclude that a defendant has effectively waived the right to counsel. There must be a "thorough [*Faretta*] evidentiary hearing" that establishes that "the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights."[9] *Black*, 223 S.W.3d at 155-56 (citing

---

[9] Kunonga does not challenge the fact that his *Faretta* hearing was constitutionally adequate. Kunonga was thoroughly questioned about his "capacity to make an intelligent decision and his knowledge of his own situation." *Black*, 223 S.W.3d at 156. The on-the record inquiry ensured that Kunonga was not "acting under duress, [did] not suffer from a mental incapacity, [was] literate and [was] minimally familiar with the trial process, including possible defense to the crime charged, the different phases of trial, objection procedure and the elements of the crime charged." *Id*. The trial court ensured that Kunonga "under[stood] the possible penalties if convicted." *Id*. (citing *City of St. Peters*, 125 S.W.3d at 894). The trial court made sure Kunonga "under[stood] exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights." *Black*, 223 S.W.3d at 156 (citing *Faretta*, 422 U.S. at 835). The trial court ensured that Kunonga "under[stood] that he ha[d] the right to counsel, including appointed counsel [as he [was] indigent." *Black*, 223 S.W.3d at 156. When Kunonga chose to continue to assert his right to self-represent, "the court . . . advised him generally that it is usually a mistake to proceed without a lawyer and then specifically warn[ed] him about the dangers and repercussions of that decision." *Id*. And the trial court "informed [Kunonga]" of "the nature of the charges against him." *Id*. at 154 (citing *City of St.*

25

*Faretta*, 422 U.S. at 835). And the defendant must be afforded the opportunity to sign "the written form as mandated" by the General Assembly. *Peterson v. State*, 572 S.W.2d 475, 477 (Mo. banc 1978); *May*, 718 S.W.2d at 497. *See also State v. Wilkerson*, 948 S.W.2d 440, 445 (Mo. App. W.D. 1997) (holding that "[i]n determining whether the waiver of counsel is knowing and intelligent, the trial court is not only required to resolve the application of section 600.051, it must also determine whether the defendant was advised of the perils of self-representation").

Because the State bears the burden to prove that an unrepresented defendant waived the right to counsel, it follows that to sustain this burden, the State must prove compliance with section 600.051 and that a defendant was afforded a *Faretta* hearing. *City of Kansas City*, 629 S.W.2d at 634 (citing *Morris*, 456 S.W.2d at 293). Only then will the burden shift to the unrepresented defendant to establish that the waiver of counsel was not knowing, voluntary, or intelligent. *City of Kansas City*, 629 S.W.2d at 634.

We thus conclude that as the purpose of section 600.051 is to afford objective assurance that the constitutional right to counsel has been effectively waived, a violation of section 600.051 is evident, clear, and obvious error that facially establishes a substantial ground for believing that a manifest injustice or miscarriage of justice has resulted, satisfying the first step of plain error review.

---

*Peters*, 125 S.W.3d at 894). The trial court also advised Kunonga that if he pleaded guilty or was found guilty, the judge would most likely impose a sentence of confinement.

26

*A Violation of Section 600.051 Establishes a Manifest Injustice or Miscarriage of Justice As Required by the Second Step of Plain Error Review*

Noncompliance with section 600.051 was first addressed by the Missouri Supreme Court in *Peterson*. In *Peterson,* a Rule 27.26[10] case, the trial court failed to secure a signed written waiver of counsel from the defendant. *Peterson*, 572 S.W.2d at 475-76. The State conceded the violation of section 600.051, but argued that the "trial court's failure to require a written waiver of the right to assistance of counsel was not prejudicial . . . ." *Id*. at 476. The Supreme Court rejected this argument, holding that:

> [I]f the practice of judicially determining the prejudicial effect of failure to follow the rule mandated by section 600.051 is encouraged by subjective judicial constructions, the exceptions may well become better known as the rule itself. In other words, if we, the judiciary, constantly give currency to this practice, the value and benefits to be derived from use of the statutory written form will be lost.
>
> . . . The General Assembly has fixed the signing of a written waiver form as being a necessary part of the procedure to be followed in a criminal case wherein a defendant may receive a jail sentence or confinement, and the courts must abide it.

*Id*. at 476-77. The Supreme Court thus held "that failure to use the written form as mandated is reversible error." *Id*. at 477.

In *Hunter*, the Supreme Court reiterated that it "felt compelled to insist on strict compliance with [section 600.051], holding that failure to use the written form mandated reversal, ***even in the absence of prejudice***." *Hunter*, 840 S.W.2d at 860 (citing *Peterson*,

---

[10] Rule 27.26 was the precursor to Rule 29.15, addressing post-conviction remedies following conviction of a felony after trial.

572 S.W.2d at 477) (emphasis added). *Hunter* characterized the rule announced in *Peterson* as "inflexible." *Hunter*, 840 S.W.2d at 860.

Only one exception has been recognized by the Supreme Court to the bright-line rule announced in *Peterson*. In *May*, a defendant refused to sign a written waiver of counsel presented to him in accordance with Section 600.051 despite indicating an express desire to represent himself. *May*, 718 S.W.2d at 497. *May* concluded "that *Peterson* should not be applied to mandate the written waiver when the statutory waiver is presented to the defendant in open court and read into the record, and he maintains his purpose of conducting his own defense, while explicitly refusing to sign."[11] *Id.* at 497. *May* thus held that a defendant can effectively waive the required waiver by refusing to sign the form as "[t]o hold otherwise would permit a form of gamesmanship which might seriously interfere with trial proceedings." *Id.*

Though not an exception to *Peterson's* bright-line rule, the Supreme Court has clarified that section 600.051 is not implicated when a defendant is provided "standby" or "hybrid" counsel because the defendant "has not actually waived counsel." *Hunter*, 840 S.W.2d at 860.[12] In this same vein, all three intermediate appellate courts have held that section 600.051 is not implicated where a waiver of the right to counsel is not express but is instead implied by conduct. *State v. Yardley*, 637 S.W.2d 293, 295-96 (Mo. App. S.D.

---

[11] This court came to a similar conclusion two years before *May* in *State v. Williams*, 679 S.W.2d 915 (Mo. App. W.D. 1984). In *Williams*, a defendant repeatedly stated he wanted to represent himself but refused to sign a waiver of counsel form, even though the trial court "made a thorough effort, on the record, to inform defendant about each provision listed in Section 600.051." *Id.* at 917. We held that the "trial court was not required to appoint an attorney when defendant refused to sign a written waiver." *Id.* at 918.

[12] Though *Hunter* concluded that section 600.051 is not implicated in "standby" or "hybrid" counsel cases, the court nonetheless noted that "trial courts are cautioned, as they were in *May*, to obtain written waivers of counsel whenever a defendant expresses a desire to act with less than full representation and is willing to sign such a form." *Id.*

1982) (holding that a *non-indigent* defendant who states he wants counsel while refusing to hire counsel has impliedly, not expressly, waived the right to counsel, and section 600.051 is not implicated);[13] *State v. Clay*, 11 S.W.3d 706, 713 (Mo. App. W.D. 1999) (applying *Yardley's* reasoning to find that an *indigent* defendant who refuses to cooperate with appointed counsel and insists he wants a different appointed counsel has impliedly, not expressly, waived his right to counsel, and section 600.051 is not implicated).

The bright-line rule announced in *Peterson* emanates from the relationship between section 600.051 and the Sixth Amendment right to counsel and to self-representation. The denial of a defendant's Sixth Amendment right to counsel is structural error. *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177-78, n.8 (1984)).[14] Similarly, the "[d]enial of a defendant's right to self-representation is considered structural error." *Black*, 223 S.W.3d at 153 (citing *Washington v. Recueno*, 548 U.S. 212 (2006); *Neder v. United States*, 527 U.S. 1 (1999); *Johnson v. United States*, 520 U.S. 461 (1997)). "Structural [errors] are 'constitutional deprivations . . . affecting the framework within which trial proceeds, rather than simply error in the trial process itself.'" *Strong v. State*, 263 S.W.3d 636, 647 (Mo. banc 2008) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Structural errors or defects are presumptively prejudicial. *Strong*, 263 S.W.3d at 647. They "defy

---

[13] The Southern and Eastern Districts have followed this reasoning on several occasions. *See State v. Kilburn*, 941 S.W.2d 737 (Mo. App. E.D. 1997); *State v. Davis*, 934 S.W.2d 331 (Mo. App. E.D. 1996); *State v. Ehnes*, 930 S.W.2d 441 (Mo. App. S.D. 1996); *State ex rel. Snider v. Flynn*, 926 S.W.2d 891 (Mo. App. E.D. 1996); *State v. Yeargain*, 926 S.W.2d 883 (Mo. App. S.D. 1996); *State v. Bethel*, 896 S.W.2d 497 (Mo. App. S.D. 1995); *State v. Wilson*, 816 S.W.2d 301 (Mo. App. S.D. 1991).

[14] *See Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991) for a discussion of the constitutional violations that have been held to invoke structural error, as compared to constitutional violations that constitute classic trial error.

analysis by 'harmless error' standards." *Fulminante*, 499 U.S. at 309. A constitutional right implicating structural error "'is either respected or denied; its deprivation cannot be harmless.'" *Black*, 223 S.W.3d at 153 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984)).

By holding that noncompliance with section 600.015 is reversible error without need for proof of prejudice, *Peterson* thus announced a consequence that parallels the consequence for a violation of the Sixth Amendment--structural error not amenable to harmless error analysis. *Black*, 223 S.W.3d at 153. It is not lost on this court that in its application, *Peterson's* bright-line rule is consistent with the State's burden to establish that an unrepresented defendant waived the right to counsel.

The conceded violation of section 600.051 in this case is not excused by existing precedent. The circumstances in this case do not fall into the *May* exception to *Peterson's* bright-line rule, as Kunonga did not refuse to sign a written waiver of counsel form. Nor do the circumstances in this case fall into the category of cases where section 600.051 is not implicated. Kunonga was not represented by "standby" or "hybrid" counsel as in *Hunter*. And, Kunonga did not impliedly waive his right to counsel as in *Yardley* or *Clay*.[15] Rather, Kunonga expressly waived his right to counsel and expressly stated on several occasions (including after being denied hybrid or standby counsel) that

---

[15] We reject the State's argument that Kunonga's request for standby counsel after his waiver of counsel was granted caused Kunonga's case to fall into the category of an implied waiver of counsel as to which section 600.051 is not implicated. Kunonga expressly asserted his right to waive counsel and repeated that express desire after standby counsel was denied. Therefore, contrary to the State's assertion, *State v. Nelson*, 465 S.W.3d 533 (Mo. App. S.D. 2015) is not applicable to this case.

he wished to exercise his right to self-representation.[16] *Peterson's* bright-line rule would appear to require reversal of Kunonga's conviction.

The State argues that *Peterson's* bright line rule does not apply to plain error review of a section 600.051 violation. We do not agree. Though *Peterson* does not mention plain error, *Peterson* was a postconviction case, suggesting that noncompliance with section 600.051 had not been preserved for review or raised as an issue on direct appeal. Lending further support to our disagreement with the State is the fact that in *Hunter*, the Supreme Court held that plain error review applies to unpreserved violations of section 600.051,[17] while reinforcing that *Peterson's* bright-line rule is "inflexible" and subject only to the exception announced in *May*. *Hunter*, 840 S.W.2d at 859-60.

Missouri's intermediate appellate courts have applied plain error review to section 600.051 violations but have reached inconsistent results. The seminal cases of *State v. Rogers*, 674 S.W.2d 608 (Mo. App. E.D. 1984) and *State v. Wilkerson*, 948 S.W.2d 440 (Mo. App. W.D. 1997) highlight the disagreement. The State asks us to revisit this split of authority by disregarding our holding in *Wilkerson* and by applying the logic employed in *Rogers*. We decline to do so because *Rogers* improvidently disregards *Peterson* and relieves the State of its burden to prove that an unrepresented defendant waived counsel in the manner required by law.

---

[16] Kunonga advised the trial court that he was unhappy with his appointed counsel to explain his desire to represent himself. A waiver of counsel can be valid where based on the unsatisfactory performance of appointed counsel. *Wilson v. State*, 383 S.W.3d 51, 56-57 (Mo. App. E.D. 2012).

[17] The Supreme Court in *Hunter* ultimately found that section 600.051 was not implicated because the defendant there had been represented by hybrid or standby counsel. *Hunter*, 840 S.W.2d at 860.

In *Rogers*, a defendant signed a written waiver of counsel form that excluded more than one of the clauses required by section 600.051. *Rogers*, 674 S.W.2d at 610. The violation of section 600.051 was not preserved for appellate review and was thus subject to plain error review. *Id.* The Eastern District concluded that a violation of section 600.051 where no written waiver form is signed at all, as in *Peterson*,[18] should be treated differently from a violation of section 600.051 where a signed written waiver of counsel form fails to include all required content. *Id.* at 611. The Eastern District thus refused to apply *Peterson's* bright-line rule and concluded that because the defendant had experience in legal research, the defendant had been advised of the perils of self-representation on-the-record, and there was overwhelming evidence of the defendant's guilt, "no miscarriage of justice has occurred as a result of the omission in the waiver of counsel form." *Id.* Plain error review as conducted by *Rogers* relieved the State of its burden to establish a waiver of counsel in the manner required by law and ignored that a violation of section 600.051 implicates the right to counsel, structural error which is deemed to affect the entire trial. *Fulminante*, 499 U.S. at 310.

*Wilkerson* declined to follow *Rogers*. In *Wilkerson*, as in *Rogers*, a written waiver of counsel form did not strictly comply with section 600.051 because it failed to include content required by the statute. *Wilkerson*, 948 S.W.2d at 442. The violation of section 600.051 was not preserved for appellate review and was thus subject to plain error review. *Id.* at 444. *Wilkerson* rejected as meaningless the factual distinction drawn by

---

[18] The Eastern District similarly distinguished *State v. Hannah*, 649 S.W.2d 260 (Mo. App. W.D. 1983) and *State v. Hamilton*, 647 S.W.2d 594 (Mo. App. W.D. 1983), cases which also addressed situations where no waiver of counsel form was signed at all.

32

*Rogers* between a deficient written waiver of counsel form and no form at all, concluding that the distinction "ignores the rule enunciated in *Peterson*, which specifically requires a written waiver of counsel in the form prescribed by section 600.051, unless an exception applies, and the failure to do so is reversible error without any showing of prejudice." *Id*. at 444-45 (citing *Peterson*, 572 S.W.2d at 476-77). *Wilkerson* also held that *Rogers* "ignores the stated purpose of requiring a written waiver in the form prescribed by section 600.051--'to provide objective assurance that the defendant's waiver is knowing and voluntary.'" *Wilkerson*, 948 S.W.2d at 445 (quoting *May*, 718 S.W.2d at 496). "Logically, the objective assurance to which the court refers would extend to each and every element required in section 600.051." *Wilkerson*, 948 S.W.2d at 445. *Wilkerson* thus concluded that the failure to comply with section 600.051 is plain error that requires reversal.[19] *Id*. at 444. (citing *State v. Hamilton*, 647 S.W.2d 594, 596 (Mo. App. W.D. 1983)). In the process, *Wilkerson* implicitly held that a violation of section 600.051 equates with the manifest injustice or miscarriage of justice required by plain error review. *Wilkerson*, 948 S.W.2d at 446 (noting that in "the case of a defective written waiver . . . no showing of prejudice is required to cause a reversal").

---

[19] In *Wilkerson*, in addition to the defective written waiver of counsel form, the defendant was not afforded a *Faretta* hearing to advise the defendant "of the perils of self-representation." *Wilkerson*, 948 S.W.2d at 446. Curiously, *Wilkerson* holds that "unlike the case of a defective written waiver, where no showing of prejudice is required to cause a reversal, a showing of prejudice is required when error is predicated on the trial court's failure to inform the defendant of the perils of self-representation." *Wilkerson*, 948 S.W.2d at 446. That proposition is discredited by *Black*, 223 S.W.3d at 155, which held that where an on-the-record inquiry of an accused establishes a knowing and intelligent waiver of the right to counsel, it is structural error requiring reversal to deprive the accused of the constitutional right to self-representation. The reverse is also the case, requiring reversal for structural error should an accused be allowed to self-represent even though the on-the-record inquiry of the accused fails to establish a knowing and intelligent waiver of the right to counsel. *See City of St. Peters*, 125 S.W.3d at 894-95.

We agree with *Wilkerson's* implicit holding. "In evaluating the situation with respect to plain error, special attention should be given to the nature of the error which has occurred." *State v. Smith*, 595 S.W.2d 764, 766 (Mo. App. W.D. 1980) (holding discrimination in jury selection to be plain error). "'[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Id*. (quoting *Chapman v. State of California*, 386 U.S. 18, 23 (1967)). In such cases, "plain error may exist even where the evidence of the defendant's guilt is overwhelming." *Smith*, 595 S.W.2d at 765. Section 600.051's intended purpose is to ensure an effective waiver of the constitutional right to counsel--a constitutional violation which yields structural error not subject to harmless error analysis. The prohibition against engaging in harmless error analysis recognizes that as to those limited constitutional rights which yield structural error, "the entire conduct of the trial from beginning to end is obviously affected" by the violation. *Fulminante*, 499 U.S. at 309-10. It follows that where section 600.051 is violated, a defendant should not be required to further prove that the deprivation of counsel resulted in a manifest injustice or miscarriage of justice.[20]

For the reasons explained in *Wilkerson*, we continue to decline to follow *Rogers*, and add to our previously stated rationale for doing so that *Rogers* improvidently relieved

---

[20] We recognize that the United States Supreme Court has not yet resolved whether every constitutional violation yielding structural error automatically satisfies the prong of federal plain error analysis that is most similar to Missouri's requirement of a demonstrated manifest injustice or miscarriage of justice. In *Puckett v. United States*, 556 U.S. 129, 140 (2009), the Supreme Court was faced with the argument that the third prong of federal plain error analysis (which requires proof that an error impacted substantial rights--which *United States v. Olano*, 507 U.S. 725, 734 (1993) holds requires proof of a demonstrable impact on the outcome of the proceedings) should be deemed established when a constitutional violation results in structural error. *Puckett* observed that "[t]his Court has several times declined to resolve whether 'structural' errors--those that affect 'the framework within which the trial proceeds,'--automatically satisfy the third prong of the plain-error test [requiring proof that unpreserved error affected 'substantial rights']." *Puckett*, 556 U.S. at 140 (referring to Fed. Rule Crim. Proc. Rule 52(b)) (internal and other citations omitted).

34

the State of its burden to establish a waiver of counsel and ignores that a violation of section 600.051 implicates a constitutional right that by its nature inherently affects the entirety of a trial. We thus reaffirm, as we effectively held in *Wilkerson*, that a demonstrated violation of section 600.051 sustains a defendant's burden to prove the manifest injustice or miscarriage of justice required by the second step of plain error review.

***Where a Violation of Section 600.051 is Subject to Plain Error Review, the State is Nonetheless Entitled to Objectively Demonstrate that the Violation did not Impact the Knowing, Voluntary, and Intelligent Waiver of Counsel, and thus did not Result in a Manifest Injustice or Miscarriage of Justice***

Though a violation of section 600.051 constitutes reversible error, even pursuant to plain error review, this case presents a unique set of circumstances that has never before been addressed. During Kunonga's *Faretta* hearing, the trial court inquired of Kunonga about each of the topics omitted from his written waiver of counsel form, using questions that tracked the language of section 600.051 nearly verbatim. The State argues that because of this objectively demonstrable fact, there is no manifest injustice or miscarriage of justice, notwithstanding the section 600.051 violation, because Kunonga was apprised of, and understood, the content required by section 600.051 but omitted from his waiver form.

We agree with the State. Absolutely nothing would have been added to Kunonga's knowing, voluntary, and intelligent waiver of counsel had the content omitted from his written waiver form been included in the form, as the omitted topics were each thoroughly addressed with Kunonga on the record. We thus recognize a narrow and

35

limited exception to our holding in *Wilkerson*. We conclude that in a plain error case, a defendant will not be rewarded with reversal when the State effectively demonstrates that an unpreserved violation of section 600.051 is a mere technical violation having no impact on the knowing, voluntary, and intelligent waiver of counsel because the content omitted from a written waiver form was covered, nearly verbatim, in a *Faretta* hearing. This narrow exception effectively allows the State, in a plain error case where the exception applies, to overcome the otherwise obligatory holding that a violation of section 600.051 constitutes a manifest injustice or miscarriage of justice.[21]

We are mindful, of course, of *Peterson's* bright-line and inflexible rule. However, the narrow and limited exception recognized today is not susceptible to the concern *Peterson* expressed that "subjective judicial discussions" of "the prejudicial effect of failure to follow the rule mandated by section 600.051" would thwart the "value and benefits to be derived from use of the statutory written form . . . ." *Peterson*, 572 S.W.2d at 476. Instead, the exception recognized today continues to insist that the content reflected in section 600.051 be expressly addressed with a defendant in a manner that evidences the defendant's understanding, permitting only a slight variation from the mandate of section 600.051 when that understanding is reflected by the defendant on-the-record, instead of by signature on a written form.

The exception we recognize today is not inconsistent with *City of St. Peters*, a case involving the opposite scenario, where a written waiver that complied with section

---

[21] To be clear, we are not holding that reversible error can be avoided under the same circumstances where a violation of section 600.051 has been preserved for appellate review. That question is not before us.

36

600.051 was signed, but an on-the-record *Faretta* hearing did not sufficiently establish a knowing, voluntary, and intelligent waiver of the right to counsel. *City of St. Peters*, 125 S.W.3d at 894. The Eastern District held that the obligation to ensure that the waiver of counsel is knowing, voluntary, and intelligent "is not extinguished merely by the signing of the form" required by section 600.051. *Id*. The conclusion in *City of St. Peters* is in keeping with the fact that section 600.051 describes a **minimum** mandated litany that does not necessarily comport with the "penetrating and comprehensive examination" required to satisfy *Faretta*. *Id*. (quotation omitted). "Because this is a matter of constitutional right, a simple waiver of counsel form, without a record of hearing, is insufficient." *Id*. at 895.

Applied to Kunonga's case, the narrow and limited exception we recognize today requires us to deny Kunonga's fourth point on appeal. Although the conceded violation of section 600.051 would ordinarily have been sufficient to sustain Kunonga's burden to establish plain error warranting reversal, the State has objectively demonstrated that the violation of section 600.051 did not result in a manifest injustice or miscarriage of justice. The violation of section 600.051 had no impact on Kunonga's knowing, voluntary, and intelligent waiver of counsel because the content required by section 600.051 but omitted from Kunonga's waiver of counsel form was covered, nearly verbatim, during Kunonga's *Faretta* hearing.

Point four is denied.

## Conclusion

The trial court's judgment of conviction is affirmed.

_____
Cynthia L. Martin, Judge

All concur.