IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 STATE OF MISSOURI, )
 )
 Respondent, )
 WD83890
 v. )
 )
 OPINION FILED:
 )
 November 9, 2021
 JOHNNY D. FLOYD, )
 )
 Appellant. )

 Appeal from the Circuit Court of Henry County, Missouri
 The Honorable M. Brandon Baker, Judge

 Before Division Four: Cynthia L. Martin, Chief Judge,
 Mark D. Pfeiffer, Judge, and James E. Welsh, Senior Judge

 Mr. Johnny Floyd (“Floyd”) appeals from the judgment of the Circuit Court of Henry

County, Missouri (“trial court”), entered after a jury trial in which he was found guilty and

convicted of unlawful use of a weapon, unlawful possession of a firearm, resisting arrest, and

burglary in the first degree. Floyd asserts that the trial court violated Due Process in allowing him

to represent himself at trial and in refusing to offer a self-defense instruction. The State concedes

that “the trial court erred in allowing him to represent himself at trial” without the requisite Faretta1

 1
 Faretta v. California, 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
hearing. Finding merit in Floyd’s self-representation claim on appeal, we reverse his convictions

and sentences and remand the case for a new trial consistent with today’s ruling.

 Factual and Procedural Background2

 On May 11, 2017, Mr. Garrett Reed (“Reed”) came home and found a green Ford Escort

in his driveway. Floyd was behind the wheel of the Escort. Reed asked Floyd, “[W]hat are you

doing here, what can I help you with?” Floyd responded that he was on his phone and would leave

when he was “good and ready.” Reed informed Floyd that it was Reed’s private property and told

Floyd to leave. Floyd again said he would leave when he was ready. Floyd and Reed engaged in

“several minutes of altercations,” during which Floyd went back and forth multiple times between

his car and Reed’s truck. Eventually, Floyd “peel[ed] out” and left Reed’s property.

 Reed followed Floyd down the highway to get his license plate number. When Reed caught

up to Floyd, Floyd slowed down in front of him. Reed passed Floyd, and then Floyd passed Reed.

Both were driving in excess of ninety miles per hour. When they came to a two-lane highway,

Reed was in “the proper right-hand lane” while Floyd was in the left lane of oncoming traffic.

Floyd pulled up next to Reed and pointed a snub-nose revolver at Reed. Reed “thought about

swerving” his truck into Floyd’s car but slowed down instead. As Floyd passed, he fired two shots.

Reed called 911.

 An Officer with the Clinton Police Department received a call from the dispatcher that

shots had been fired, identifying the vehicle involved and its location. The Officer proceeded to

the location. When Floyd was boxed in by other cars in traffic, the Officer exited his vehicle and

proceeded toward Floyd’s car. The Officer saw Floyd throw his revolver underneath the car.

 2
 We view the facts in the light most favorable to the jury’s verdict. State v. Kelliker, 605 S.W.3d 440, 442
n.2 (Mo. App. W.D. 2020).

 2
Floyd exited the vehicle and began to flee. He ran into a restaurant through the back door to evade

law enforcement officers. Although Floyd resisted, officers were eventually able to arrest him.

 Floyd was charged as a prior and persistent offender with the class B felony of unlawful

use of a weapon by knowingly discharging a firearm from a motor vehicle, § 571.030 (Count I);

the class D felony of unlawful possession of a firearm, § 571.070 (Count II); the class E felony of

resisting arrest by fleeing from a law enforcement officer, § 575.150 (Count III); and the class B

felony of burglary in the first degree by unlawfully entering a building for the purpose of resisting

arrest, § 569.160 (Count IV).3

 Prior to trial, Floyd had been represented by numerous attorneys and he fired all of them.

Floyd informed the trial court that he wanted to proceed to trial pro se and presented to the trial

court a signed handwritten waiver of counsel. However, Floyd thereafter requested a bond so he

could hire another lawyer. The trial court told Floyd that he could hire a lawyer or reapply for the

Public Defender from jail. Floyd failed to hire another attorney before trial and the trial court

proceeded to trial with Floyd representing himself and without the trial court first conducting the

requisite Faretta hearing to establish that Floyd understood what rights and privileges he was

waiving, the dangers associated therewith, and that his waiver of counsel was knowing, intelligent,

and voluntary.

 After the jury was sworn and the parties were in chambers, Floyd asked for a continuance

and to “be put on the public defender’s list and wait for a lawyer.” The trial court denied both

requests. At the instruction conference, Floyd asked for a self-defense instruction. The prosecutor

objected on the grounds that Floyd had not given the State advance notice of his intent to rely on

 3
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016.

 3
that affirmative defense and did not present any evidence to support that defense. The trial court

denied Floyd’s request.

 The jury found Floyd guilty as charged. Floyd filed a pro se motion for new trial, asserting

that the trial court erred in rescinding its appointment of standby counsel, in failing to hold a

Faretta hearing before allowing Floyd to proceed pro se, in denying his repeated request for

counsel, and in denying his request for a self-defense instruction. The trial court appointed the

Public Defender to represent Floyd at sentencing. The trial court, having previously found that

Floyd was a prior and persistent offender, sentenced him to fifteen years’ imprisonment without

the possibility of parole on the unlawful use of a weapon charge, ten years’ imprisonment on the

unlawful possession charge, five years’ imprisonment on the resisting arrest charge, and ten years’

imprisonment on the burglary charge, to be served concurrently.

 After being granted an extension by this Court, Floyd appealed. Additional facts will be

presented as necessary in the analysis section below.

 Standard of Review

 Floyd argues on appeal that, in allowing Floyd to represent himself, the trial court violated

both his constitutional rights and a statute. He did not raise either of these claims at trial.

“Constitutional claims must be made at the first opportunity to be preserved for review.” State v.

Ndon, 583 S.W.3d 145, 153 (Mo. App. W.D. 2019) (internal quotation marks omitted). “However,

‘a self-represented defendant’s failure to object at trial regarding the knowing, voluntary, and

intelligent nature of his waiver of the right to counsel is generally excused.’” Id. (quoting State v.

Kunonga, 490 S.W.3d 746, 759 (Mo. App. W.D. 2016)). “This is because a pro se defendant

‘cannot be expected to object that a waiver-of-counsel was not voluntary because of alleged

inadequacies in an on-the-record inquiry designed to determine whether [the] waiver is knowing,

 4
voluntary, and intelligent.’” Id. (quoting Kunonga, 490 S.W.3d at 759). “Thus, we review a claim

that the waiver of counsel hearing was inadequate de novo.” Id.

 Analysis

 Floyd asserts four points on appeal. In Points I, II, and III he claims trial court error in

allowing him to proceed to trial pro se. Specifically, he contends that the trial court erred in

accepting a statutorily insufficient waiver of counsel from him (Point I); in failing to conduct a

Faretta hearing on the record to ensure that his waiver of counsel was knowing, intelligent, and

voluntary (Point II); and in accepting his equivocal waiver of counsel (Point III). In Point IV he

claims the trial court committed instructional error. Because Floyd’s second point is dispositive,

Points I, III, and IV are moot and will not be addressed.

 Floyd contends that the trial court violated his constitutional rights to a fair trial, effective

assistance of counsel, and due process by allowing him to represent himself without first

conducting a Faretta hearing on the record to ensure that his purported waiver of counsel was

knowing, intelligent, and voluntary. He argues that the trial court’s failure to conduct such a

hearing on the record amounted to structural error and that his convictions should be reversed and

his case remanded for a new trial.

 “The Sixth Amendment right to counsel ‘implicitly embodies a correlative right to dispense

with a lawyer’s help.’” Ndon, 583 S.W.3d at 154 (quoting Faretta v. California, 422 U.S. 806,

814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). “This right applies to the states through the Due

Process Clause of the Fourteenth Amendment.” Id. (internal quotation marks omitted). The trial

court does not have the discretion to force an attorney upon a defendant who validly waives the

right to counsel. Id. However, due process requires that for a waiver of counsel to be effective it

must be knowingly and intelligently made. Id.

 5
 “Missouri has two requirements that must be satisfied before the [trial] court can conclude

that a defendant has effectively waived the right to counsel.” Id. (citing Kunonga, 490 S.W.3d at

764). First, “[t]here must be a thorough [Faretta] evidentiary hearing that establishes that the

defendant understands exactly what rights and privileges he is waiving, as well as the dangers

associated with waiving constitutional rights.” Id. (internal quotation marks omitted). “Second,

the defendant must be given the opportunity to sign the written waiver of counsel form mandated

by Section 600.051.” Id.

 A close review of the record reveals that, between options of retained counsel and

appointed counsel, Floyd was represented at various stages of the proceedings below by no fewer

than six attorneys—all of whom Floyd fired. One of the attorneys was appointed by the trial court

as standby counsel and Floyd sought and was granted permission by the trial court to fire that

attorney as well. To say the least, Floyd’s behavior was recalcitrant and we do not fault the trial

court for being frustrated with Floyd’s pre-trial antics.

 And, although Floyd presented the trial court with a signed handwritten waiver of counsel

document that purported to comply with section 600.051,4 it is also clear from the record that the

trial court never conducted a Faretta hearing establishing Floyd’s knowing, intelligent, and

voluntary waiver of counsel after first being thoroughly advised of the constitutional rights and

 4
 The Missouri General Assembly enacted section 600.051 in 1976, one year after Faretta was decided, to
create a procedure through which the waiver of counsel could be effectuated. State v. Kunonga, 490 S.W.3d 746, 764
(Mo. App. W.D. 2016). “[T]he purpose of section 600.051 . . . is to provide objective assurance that the defendant’s
waiver is knowing and voluntary.” Id. (internal quotation marks omitted). “[S]ection 600.051 is very specific in its
identification of the minimum required content of a written waiver of counsel form.” Id. Floyd did prepare and sign
a waiver form that followed the format of section 600.051.1(1)-(6). However, “the obligation to ensure that the waiver
of counsel is knowing, voluntary, and intelligent is not extinguished merely by the signing of the form required by
section 600.051.” Id. at 771 (internal quotation marks omitted). Furthermore, Floyd’s handwritten waiver of counsel
was deficient in that it did not accurately state the range of punishment for two of the charges against him. “[A]
violation of section 600.051 satisfies the first step of plain error review because section 600.051 protects a fundamental
constitutional right, and compliance with section 600.051 is essential to the State’s ability to sustain its burden to
establish a waiver of counsel.” Id. at 761. Furthermore, “a violation of section 600.051 constitutes a manifest injustice
or miscarriage of justice as required by the second step of plain error review because a violation of the right to counsel
is structural error that is presumed to infect the entirety of a trial.” Id.

 6
privileges that he was waiving, as well as the associated dangers of such a waiver. The State

concedes this point and affirmatively represents the following in its appellate briefing:

 [Floyd] did prepare and sign a waiver form that tracked the language of
 section 600.051, RSMo. However, the State’s burden of proving a knowing and
 intelligent waiver is not met simply because the trial court received and reviewed
 the form. State v. Grant, 537 S.W.3d 426, 428-29 (Mo. App. S.D. 2018). The court
 is still required to make an on-the-record inquiry that timely informs the defendant
 of the nature of the charges against him, potential sentences if convicted, potential
 defenses he might offer, the nature of trial proceedings, and dangers of proceeding
 pro se. Id. at 428.

 The record . . . does not demonstrate that the court engaged in the required Faretta
 inquiry prior to [Floyd] being allowed to waive counsel and proceed pro se.
 Accordingly, the State must concede error.

 We agree with the State’s detailed concession on appeal and appreciate the candor of the

State in admitting the constitutional infirmity below.

 The State bears the burden to prove that an unrepresented defendant waived the right to

counsel; to sustain its burden, the State must prove that a defendant was afforded a Faretta hearing

in compliance with section 600.051. Kunonga, 490 S.W.3d at 765. “Only then will the burden

shift to the unrepresented defendant to establish that the waiver of counsel was not knowing,

voluntary, or intelligent.” Id. Although no specific litany is required for a Faretta hearing, “[a]

trial court can only make certain that a defendant has knowingly, voluntarily, and intelligently

waived the right to counsel from a penetrating and comprehensive examination of all the

circumstances.” Id. at 763-64 (internal quotation marks omitted). Whether a defendant’s waiver

is made knowingly and intelligently depends on the particular facts and circumstances surrounding

the case, including the background, experience, and conduct of the accused.” State v. Black, 223

S.W.3d 149, 154 (Mo. banc 2007). Fundamentally:

 [i]n Missouri, a defendant’s waiver is not knowing and intelligent unless the court
 timely informs him as to the nature of the charges against him, potential sentences
 if convicted of the offenses, potential defenses he can offer, the nature of the trial

 7
 proceedings, [and] the fact that, if the defendant refuses counsel, he will be required
 to proceed pro se and the dangers of proceeding pro se.

Id. (quoting City of St. Peters v. Hodak, 125 S.W.3d 892, 894 (Mo. App. E.D. 2004)). The record

reveals that the trial court did not conduct a Faretta evidentiary hearing to establish that Floyd

understood exactly what rights and privileges he was waiving and the dangers associated with

waiving his constitutional rights by proceeding pro se.

 Here, as stated previously, the State concedes that the requisite Faretta inquiry was not

made by the trial court and we agree as well that the record establishes that no such Faretta inquiry

was made by the trial court prior to permitting Floyd to proceed to trial pro se. Accordingly, Floyd

is entitled to a new trial. See, e.g., State v. Campanella, 609 S.W.3d 526, 526-27 (Mo. App. S.D.

2020); State v. Grant, 537 S.W.3d 426, 429-30 (Mo. App. S.D. 2018); State v. Rawlins, 248

S.W.3d 680, 685 (Mo. App. W.D. 2008); State v. Johnson, 172 S.W.3d 900, 902 (Mo. App. S.D.

2005); State v. Wilkerson, 948 S.W.2d 440, 445-46 (Mo. App. W.D. 1997).

 Point granted.

 Conclusion

 Floyd’s convictions and sentences are reversed, and the case is remanded for a new trial to

be conducted in a manner consistent with our ruling today. Specifically, upon remand, should

Floyd persist in his desire to represent himself pro se, the trial court must comply with the Due

Process requirements that are fully detailed in today’s ruling.

 /s/Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Cynthia L. Martin, Chief Judge, and James E. Welsh, Senior Judge, concur.

 8